LAURENCE H. BOON et al.

*v.*

HENRY S. KENT et al.

The description of a mortgage of land lying on a navigable river and creek, began in the middle of the creek, and ran, among other courses, along the sand beach of the river, covering a specified number of acres, and concluding, " With all the land attached and appertaining thereto, known as sand beach and guard, down to low-water mark," in the river and creek. The mortgagor conveyed the premises the same day the mortgage was given, by the same description, to one D., to whom the riparian commissioners of the state shortly afterward conveyed two tracts in front of part of the premises, and between high-water line and the commissioners' exterior line. D. afterward conveyed the premises to H., by the same description. Attached to the premises is a prescriptive right of several fishery in the waters covering the land conveyed by the riparian commissioners, and also a prescriptive right to take sand from the beach. By statute, only the owner of the upland has a pre-emptive right to obtain the adjoining riparian grant.—*Held*, that the grant to D. enured to the benefit of the mortgagees, and that as D. could not have set up such grant by way of defence to a bill to foreclose the mortgage, and thus exclude it from the premises to be sold under the foreclosure, neither could the present owner, his grantee, be permitted to avail himself of such defence.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. A. H. Slape,* for complainants.

*Mr. C. H. Sinnickson,* for answering defendants.

THE CHANCELLOR.

This is a suit for foreclosure and sale of mortgaged premises in Salem county. The mortgage was given, December 26th, 1882, by J. Howard Subers to David A. Thompson, to secure part ($10,000) of the purchase-money ($18,000) of the property which was conveyed by Thompson to Subers by deed of that date. The premises are upon Delaware river, Salem cove and Salem creek, and are described in the deed of conveyance and mortgage as beginning at a corner in the middle of a creek, which corner is the corner of land of Clement Hall; thence running several courses along the line of that land to a corner in the sand beach; thence, along that beach, certain courses to the meadow bank; thence, along that bank, certain specified courses to a corner therein; and thence to a corner in the old bank at or near the marsh creek; and they are said, in the deed and mortgage, to contain, within those bounds, exclusive of sand beach and guard, one hundred and seventy-four and thirty-two hundredths acres, more or less; and then the following is added: "With all the land attached and appertaining thereto, known as sand beach and guard, down to low-water mark in the river Delaware and Salem creek." Subers conveyed the property, December 26th, 1882, by the same description, to Daniel H. Kent. The riparian commissioners of the state, by deed dated February 17th, 1883, conveyed to Kent two tracts, each of which is in front of part of the property, and between high-water line and the exterior line established by the commissioners. Daniel H. Kent conveyed the mortgaged premises, July 21st, 1884, to the defendant Henry S. Kent, by the same description contained in the mortgage. David A. Thompson assigned the mortgage, January 3d, 1883, to Elisha Bassett and Joshua Thompson, trustees, and they assigned it, February 15th, 1883, to the complainants.

The complainants insist that, inasmuch as the description of the mortgaged premises expressly includes "all the land attached and appertaining to" the premises described in the mortgage and "known as sand beach and guard, down to low-water mark in the river Delaware and Salem creek," it embraces in the description the two lots of land so conveyed by the riparian

Boon *v.* Kent.

commissioners to Daniel H. Kent; and that if it be held that the two lots are not included in the description of the mortgaged premises, then it should be held that the mortgage embraces them as property which, though acquired after the giving of the mortgage, should in equity be decreed to be mortgaged by that instrument. And they insist that the mortgagor had a right to mortgage the land between high and low-water lines, because the description in the deeds of conveyance under which he held the property embraced it, and because there was a prescriptive right of several shore fishery in the waters covering the land conveyed by the riparian commissioners and also a prescriptive right to take sand from the beach, which rights had been enjoyed by the owners of the property from time immemorial as appurtenant to the upland. They also claim that by the right of adjacency the owner of the upland had, when the mortgage was given, the right to the land under water so conveyed by the riparian commissioners; so that, as against him and his grantees or mortgagees of the upland, that conveyance is of no avail; and that if he had not such absolute right by reason of such adjacency, he had, under the supplement of 1871 to the riparian act, a pre-emptive right by reason thereof to such conveyance from the commissioners; and the complainants insist that for those reasons the conveyance by the commissioners to Daniel H. Kent cannot be set up as a defence against their mortgage. On the other hand, the defendant Elisha S. Kent, who alone has answered the bill, insists, by his answer by way of cross-bill, that the land conveyed by the grant from the state should not be included in, but should be excluded from the sale of the mortgaged premises under any decree of foreclosure and sale which may be made in this suit; and that the title thereto did not pass by the deed from Thompson to Subers, but was in the state; and he insists that the complainants ought not, in equity, to have the benefit of the subsequent purchase of the state's title by Daniel H. Kent.

The description of the mortgaged premises in the mortgage embraces the shore in front of the upland. It appears by the evidence, that the property was conveyed by the same description by the deeds under which David A. Thompson derived his

title. Those deeds, from 1863, are given in evidence. The property has been owned by the Thompson family from the settlement of Salem county. Daniel H. Kent's ownership of the mortgaged premises, through the deed from Thompson to Subers, enabled him to obtain the grant from the riparian commissioners, which otherwise he could not have obtained. *P. L. of 1871, Rev. p. 95 ; Fitzgerald* v. *Faunce, 17 Vr. 536, 594.* The owners of the property had, up to the time when the deed to Subers was given, exercised the right of fishing, under a claim of several fishery, along the whole front of the property on both the river and creek, from time immemorial. They also claimed the exclusive right to take sand from the bars. It is very important to the owner of the upland that he should own the shore also. To sell the one without the other would be so prejudicial to the complainants that, according to the evidence, it is doubtful whether, if so sold, it would bring enough to pay the mortgage. The grant of the riparian commissioners, under the circumstances, enured to the benefit of the mortgage. In *Eagle Fire Insurance Co.* v. *Lent, 6 Paige 635,* where the mortgagor claimed title to the mortgaged premises under a conveyance from four grantors, two of whom were minors at the execution of the deed, but who had done no act after they became of age to disaffirm the conveyance, it was held that one who had purchased the equity of redemption from the mortgagor and had taken a conveyance subject to the mortgage, could not, upon a bill to foreclose the mortgage, set up, as a defence as to any part of the mortgaged premises, a quit-claim deed obtained from the minors after they became of age. It was held that the conveyance from the minors to the mortgagor being voidable and not void, the quit-claim was merely a ratification thereof. The principle of that case is applicable to this. David H. Kent, under the deed from Thompson, had (not to speak of the claim to the fishery and the claim to the sand) a certain interest in the shore, as riparian owner—such an interest, at least, as entitled him, under the act of 1871, to the grant from the state. As riparian owner under that deed, he was enabled to obtain the grant from the state which otherwise he could not have got, and

which the complainants, notwithstanding their interest in the property as mortgagees, could not have obtained.   The act gives to the riparian owner alone the right to buy the right of the state in the shore.   The decision of the case of *Cooper* v. *Bloodgood, 5 Stew. Eq. 209*, is applicable to this case.   There a riparian owner conveyed land by deed with the ordinary covenants, including, by the description, the land between high and low-water marks in front of it, and took a mortgage upon the premises to secure the payment of part of the purchase-money.   On the giving of the deed he agreed with the grantee to obtain for him a license under the wharf act, which he did, and under it the grantee built a wharf on part of the land under water, in front of the property.   Subsequently, and without notice to the grantor, the grantee obtained from the state a riparian lease for the shore.   On a bill for foreclosure of the mortgage, it was held that the fact that the grantee had obtained such lease constituted no defence to the suit upon the mortgage.

But further, upon the principle upon which the case of *Ames* v. *N. J. Franklinite Co., 1 Beas. 66* (affirmed, *Id. 512*) was decided, the complainants are entitled to the relief which they seek. In that case the defendants set up as a defence to the suit, which was for foreclosure of a mortgage given by them, the mistake of the scrivener who drew the mortgage in including in it property (ores) which, by the agreement of the parties, was to be excepted. The defence was set up there, as it is in this case, by cross-bill. It was held that, even if the alleged mistake could be set up, a cross-bill was unnecessary, and that if it should be shown that the mortgagee obtained his lien by mistake of the scrivener there was no reason why he should be compelled to relinquish his security until his debt should have been paid.   The maxim that he who would have equity must do equity, was applied.   In the case under consideration the deed from Thompson to Subers was given December 26th, 1882, was acknowledged December 28th, 1882, and was recorded January 5th, 1883.   The deed from Subers to David H. Kent was dated on the same day and acknowledged on the same day as the deed to Subers, and was recorded January 5th, 1883, two days after the deed to Subers

was recorded. The two conveyances were evidently given in the same transaction. Indeed, it appears from the testimony of Joshua Thompson, that they were so. David H. Kent, by writing dated January 3d, 1883, agreed, as grantee of the mortgaged premises, to pay the interest upon the mortgage semi-annually instead of annually, as provided in the mortgage. The grant from the state to David H. Kent was dated February 17th, 1883, but a few weeks after the date of the deed from Thompson to Subers. Henry S. Kent is said to be the brother of Daniel H. Kent. He took the property subject to the mortgage. As Daniel H. Kent, were he the owner of the equity of redemption, could make no defence against the mortgage under the grant from the state, Henry S. Kent, his grantee, under the circumstances, can make none. If the mortgaged premises be sold under the decree in this suit by the description contained in the mortgage, the land covered by the state's grant will be included. By his cross-bill Henry S. Kent asks that the mortgage be rectified so as to exclude that land from the lien of the mortgage. By paying the mortgage debt he can extinguish the mortgage altogether. In equity he should be left to do so. He has no ground of relief. There will be a decree in accordance with the views above expressed.