532 So.2d 746 (1988)
Mary Joyce HAYNES, Appellant,
v.
Fred CARBONELL, As Trustee for Strand Theater of Key West, Inc., a Dissolved Florida Corporation, Appellee.
No. 87-2339.
District Court of Appeal of Florida, Third District.
October 11, 1988.
*747 Cunningham, Albritton, Lenzi, Warner, Bragg & Miller and Alfred O. Bragg, Marathon, for appellant.
Hugh R. Papy, Key West, for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
A 1953 instrument conveying waterfront property described the realty as 300.43 feet in length to the Gulf of Mexico "together with all riparian rights pertaining thereto". It was discovered, thirty-three years later, that the described distance of 300.43 ends 50 feet short of the Gulf of Mexico. This dispute is about who owns the 50 feet of land between the ocean and the acreage described by footage.
Appellee Strand Corporation was the grantee under the original deed which described the property:
Commencing at the Northerly corner of the intersection of Warner Street and Beach Road, which point is on the Northerly side of Beach Road, and running thence along the Northerly side of Beach Road in an Easterly direction 300.43 feet to Gulf of Mexico; thence along the water of the Gulf of Mexico N 20 degrees, 37 feet, 26 inches W, 40 feet; thence in a Westerly direction and parallel with the line of Beach Road 300.53 feet to the Northeasterly side of Warner Street; thence in a Southeasterly direction along the Northeasterly side of Warner Street 40 feet to the point or place of beginning. Together with all riparian rights pertaining thereto.
In 1967 Strand conveyed the tract to Ignacio Carbonell, appellant Haynes's former husband. The deed described the land using only linear footage dimensions with no written reference to the Gulf of Mexico:
Commencing at the center of Section 25, bear South 89 degrees, 39 minutes and 12 seconds East 51.08 feet to the Easterly line of Warner Road; thence bear South 17 degrees, 48 minutes and 50 seconds East, along the Easterly line of Warner Road, 658.52 feet; thence bear South 89 degrees, 39 minutes and 12 seconds East, along the Northerly line of Warner Road, 110.31 feet; thence bear South 20 degrees, 40 minutes and 20 seconds East, along the Easterly line of Warner Road, 514.76 feet to the Point of Beginning of the parcel of land hereinafter described; from said Point of Beginning, bear South 89 degrees, 39 minutes and 12 seconds East 300.53 feet; thence bear North 20 degrees 37 minutes and 26 seconds West, 65 feet; thence bear North 89 degrees, 39 minutes and 12 seconds West, 300.53 feet; thence bear South 20 degrees, 40 minutes and 20 seconds East, 65 feet to Point of Beginning.
Including any bay bottom rights belonging to the Grantor herein.
The north and south boundaries are noted as having 300.53 feet, a minor difference from the first deed equal to just over one inch. The 1967 deed described bay bottom rights, whereas the 1953 instrument described riparian rights, another difference we hold insignificant for reasons to be explained.
In 1986 Carbonell deeded the property to Haynes pursuant to a judgment dissolving their marriage. The legal description employed was the same as used in the 1967 warranty deed.
Haynes later was unable to sell the parcel of land because it was discovered that the property, measured in footage from the point of beginning, stops 50 feet short of the ocean. Stated otherwise, if the boundaries *748 of the tract are limited by the 300-foot distance called in prior deeds, a 50-foot waterfront strip separates the upland and bay bottom conveyed to Haynes. Haynes asserts that the 50-foot strip of land is part of the property deeded to her and that the reason the additional 50 feet is not reflected in the deeds is either the result of a mistake by the original surveyor, or a consequence of natural accretion or reliction. Strand contends, through its trustee, that it owns the 50 feet of property in question.
Haynes brought this action for declaratory judgment challenging Strand's claim of ownership. A final judgment was entered for Strand. The trial court found that because Haynes's deed, unlike the 1953 deed, did not call the Gulf of Mexico as a natural boundary and did not expressly convey riparian rights, Haynes failed to prove by "clear and convincing evidence" an intent by the grantor to convey the 50-foot waterfront strip.
It is undisputed that the original deed conveyed a 300 foot parcel which extended to the Gulf of Mexico. It is also admitted by Strand that the parcel conveyed to Haynes by the 1967 deed is the same parcel conveyed by Strand Corporation to Carbonell in 1953. There are no instruments which evidence an intent by Strand to reserve to itself, by the 1967 conveyance, any part of the parcel it was granted in 1953.
The questions presented in this appeal are answered by common law principles, statutes, and rules of construction. Riparian rights are legal rights incident to lands bounded by navigable waters and are derived from the common law as modified by statute. City of Eustis v. Firster, 113 So.2d 260 (Fla. 2d DCA 1959). A conveyance of uplands bounded by navigable waters carries with it riparian rights in the seashores or river banks. They are not owned by the riparian landowner but are inseparable from the riparian land. § 253.141, Fla. Stat. (1985). The 1953 conveyance to Strand Corporation expressly included riparian rights, or to be more correct, littoral rights in the adjoining shores of the Gulf of Mexico.[1]
It is immaterial that the 1967 deed did not expressly convey riparian rights. Being an appurtenance to the upland, riparian interests may be severed only by an "express bilateral agreement to do so." Belvedere Dev. Corp. v. Department of Transp., 476 So.2d 649, 653 (Fla. 1985). We agree with Haynes's argument that severance of riparian or littoral rights cannot be inferred from a deed which is silent on the subject of riparian land or rights. Further, we think an intent to retain riparian interests does not follow from an expressed conveyance of the upland and bay bottom rights, and silence regarding riparian rights.
The admission by Strand Corporation[2]  that the land conveyed to it by the 1953 deed is the same land conveyed from Strand to Haynes by the 1967 instrument  is significant. That admission is inconsistent with Strand's claim that it reserved ownership in the 50 foot strip of land. As a simple syllogism the argument goes: (1) the 1953 deed conveyed Blackacre from the point of beginning to the Gulf of Mexico including riparian land, (2) the 1967 deed conveyed all of the same parcel which was the subject of the 1953 conveyance, therefore, (3) the 1967 deed conveyed Blackacre to the Gulf of Mexico and included riparian lands. It is also significant that the 1967 warranty deed, which describes bay bottom rights as part of the rights conveyed, contains no language of an intent to reserve ownership of riparian lands.
The logical argument aside, the same result obtains where the deed is given a reasonable construction. If, as Strand admits, *749 the land conveyed to Haynes in 1967 is the same parcel Strand received by deed in 1953  which extended to the Gulf of Mexico  then the existence of the 50-foot "no man's land" can be explained as a mistake by the surveyor for the 1953 deed in measuring the site from the point of beginning to the Gulf of Mexico as a natural boundary, or as a scrivener's error by the drafter of the 1953 instrument in expressing the distance from the point of beginning to the Gulf. The only other reasonable explanation is that the uplands expanded by accretion or reliction[3]  a nondispositive theory to be examined briefly in later paragraphs.
In determining the intent of the grantor where an ambiguity exists as to the location of a property boundary line, the ambiguity being caused by a called natural boundary and conflicting called distances, the natural boundary supersedes as a matter of law. See Trustees of the Internal Improvement Fund v. Wetstone, 222 So.2d 10 (Fla. 1969); Watrous v. Morrison, 33 Fla. 261, 14 So. 805 (1894); Calder v. Hillsboro Land Co., 122 So.2d 445 (Fla. 2d DCA 1960). Insofar as the 300.43 feet distance expressed in the deed defines the property boundary and conflicts with the identification of the Gulf of Mexico as a boundary, the Gulf of Mexico, as a natural monument, supersedes.
Although human error rather than natural accretion or reliction is the most likely explanation for the 50-foot difference between the linear footage expressed in the deeds and the natural boundary, accretion and reliction must be addressed briefly. It is settled that riparian and littoral property rights include the right to receive accretions and relictions to the property. Board of Trustees of the Internal Improvement Trust Fund v. Sand Key Assocs., Ltd., 512 So.2d 934, 936 (Fla. 1987). Therefore, ownership of accretions and relictions depends on and does not aid a resolution of the question as to who owns the littoral rights.
Finally, the trial court's ruling that Haynes had a burden to show by clear and convincing evidence that she was granted riparian rights by the 1967 deed of conveyance was not a correct statement of the law on the facts presented. More appropriate to the case are the principles that "[a] deed is to be construed most strongly against the grantor and most beneficially for the party to whom it is made," Central & S. Florida Flood Control Dist. v. Surrency, 302 So.2d 488, 490 (Fla. 2d DCA 1974), and "in construing the deed the design of the maker must be gathered from the whole instrument ... [to include] the subject matter embraced in the instrument, and to the intentions of the parties and the conditions surrounding them." McNair & Wade Land Co. v. Adams, 54 Fla. 550, 554, 45 So. 492, 493 (1907).
On the basis of both logic and settled legal principles, Haynes, and not the grantor, Strand Corporation, was entitled to the favorable judgment.
REVERSED.
NOTES
[1] In common usage "riparian" is generally used to define property having water frontage. In fact, the term riparian refers specifically to land abutting non-tidal or navigable river waters whereas "littoral" refers to the land abutting navigable ocean, sea or lake waters. See 65 C.J.S. Navigable Waters § 61 (1966).
[2] Facts questioned through unanswered requests for admissions are deemed to have been admitted under Florida Rule of Civil Procedure 1.370.
[3] Accretion is the extension of riparian land area due to the gradual, natural and imperceptible build up of additional land by accumulation of alluvium deposits. Reliction is the increase of riparian land area due to lowering of the water table so that previously submerged land becomes gradually uncovered. State v. Contemporary Land Sales, Inc., 400 So.2d 488 (Fla. 5th DCA 1981).