659 So.2d 1186 (1995)
Shirley A. REYNOLDS, Robert J. Reynolds, Margaret D. Painter, George L. Painter, Robert Lee Walters, Patricia J. Rosinko and John J. Rosinko, Appellants/Cross-Appellees,
v.
COUNTY OF VOLUSIA, Appellee/Cross-Appellant.
No. 93-2922.
District Court of Appeal of Florida, Fifth District.
August 18, 1995.
J. Christy Wilson, III and Lisa M. Connell, Wilson, Leavitt & Small, P.A., Orlando, for appellants/cross-appellees.
Daniel D. Eckert, County Atty., and Jamie E. Seaman, Asst. County Atty., Deland, Jonathan D. Kaney, Jr., Cobb, Cole & Bell, Daytona Beach, for appellee/cross-appellant.
W. SHARP, Judge.
Appellants contest the trial court's amended final judgment which denied their counterclaim for inverse condemnation, and Volusia County, appellee, cross-appeals the judgment on the ground that the trial court improperly determined ownership of the fee to the disputed beach area. The trial court held a non-jury trial and took extensive testimony. We affirm the result of the trial court's judgment for the reasons stated herein.
This lawsuit originated in a dispute between Volusia County and various owners of *1187 lots in the Coronado Beach Subdivision (Shirley and Robert Reynolds, Margaret and George Painter, Patricia and John Rosinko, and Robert Lee Walters), which is located in the City of New Smyrna Beach, in Volusia County. These lot owners own lots in Blocks 1 and 2 which face the beach, and they regard themselves as having acquired the fee to the beach, and all appurtenant littoral or riparian rights, after streets fronting the beach were vacated by the City. They asserted these rights by writing a letter to Volusia County, asking that it cease using their beach-shore property for concession parking and recreational use.
The County filed a declaratory judgment suit, naming the lot owners as defendants. It sought clarification of its powers to regulate and control the public use of the sandy-beach area seaward of the permanent vegetation line, extending to the mean high tide water mark, pursuant to the Volusia County Home Rule Charter[1] and the Unified Beach Code.[2] The lot owners responded by filing a counterclaim requesting an injunction to restrict public use of the sandy beach in front of their lots, or, in the alternative, a claim for the inverse condemnation of their property. The area in dispute in this lawsuit is the sandy beach seaward of the respective lot owners' properties, west of the mean high water tide line of the Atlantic Ocean, and east of the permanent vegetation line, which runs along the dunes.[3]
The County asserted that there was no taking, either by powers of eminent domain *1188 or inverse condemnation, because the lot owners in this case acquired no fee interest in the sandy beach area since they had record title only to their specific lots. The County also argued the public had acquired customary rights to use the sandy beach area for driving, parking and recreation stemming from "ancient" and constant usage by the general public.
The lot owners conceded that by virtue of custom and usage, the public had a right to use the sandy beach area for recreation, but they claimed driving and parking private vehicles and concession stands were not part of those ancient customary rights. Their claim to the fee beneath the sandy-beach area, with appurtenant littoral rights, is based on C.F. Austin's title to the property, which apparently ran to the high water mark of the Atlantic Ocean.
Austin recorded the following plat of Coronado Beach in 1889, a part of which is reproduced below.

The plat purports to run seaward to the low tide mark. But all parties acknowledge that the State of Florida owns the beach area below the mean high tide line.
The plat shows three rows of blocks, divided into lots. The most westerly tier of lots is separated from the interior blocks by a relatively wide street labeled "Rail Road Street." It runs north and south. There are several short cross streets intersecting the blocks, labeled 1st Street, 2d Street, etc., which run east to west. Blocks One and Two, where the lots owned by the owners in this lawsuit are located, are in the most easterly tier of blocks. To the east of these lots, and immediately seaward, the plat shows a narrow alley-way, labeled Wagon Road, which runs north and south. The lines in front of the lots establishing Wagon Road are solid.
Seaward of the lots involved in this lawsuit, and beyond Wagon Road, the plat shows a space which is boarded on the west by Wagon Road and on the east, by double wavy lines, indicating the tide line. The short cross streets south of 3d Street open into this space on their east ends. Within this space lies the sandy beach area in dispute in this lawsuit. Written on the plat in this space appears the following language:

*1189 BEACH STREET

300 to 400 feet wide
All of the Beach from the East foot of the sand dunes to the low water mark is hereby dedicated to the public for a highway.
The lot owners established that in 1980, the City abandoned Wagon Road. In 1983, the City passed an ordinance which purported to abandon Beach Street. The published notice read: "An ordinance vacating a street known as Beach Street." The City Commission found that it was in the City's best interest to "vacate said street." Thus, the lot owners reasoned, when the two streets fronting on their lots were vacated, they obtained the underlying fee running to the high tide line, with all appurtenant littoral rights.[4]
In a lengthy opinion, the trial court held that the lot owners obtained the fee simple title underlying Wagon Road and Beach Street. However, the court denied the lot owners any remedy in this case for two reasons. First, it determined the City did not properly abandon Beach Street because it failed to give notice to the State of Florida, an abutting landowner, citing Bhoola v. City of St. Augustine Beach, 588 So.2d 666 (Fla. 5th DCA 1991). All parties recognized and agreed the State owns the wet sandy beach area east of the mean high tide line, which was the east line of the area shown on the plat as Beach Street. The ordinance procedure required that notice be sent to all abutting landowners, and, because the State was apparently not sent notice, the court concluded that no public rights to use the Beach Street area had been vacated. Second, the court determined that the general public had acquired customary rights of usage over the sandy beach area, and that the County's regulation of such public use, pursuant to the Unified Beach Code, was reasonable.
We do not reach the question of whether the ordinance vacating Beach Street was void for lack of notice to the State, and thus whether Bhoola v. St. Augustine Beach and Daytona Leisure Corp. v. The City of Daytona Beach, 539 So.2d 597 (Fla. 5th DCA 1989) should be applied in this case, because we do not think the lot owners ever obtained a fee interest in the beach area. If they have neither a fee interest nor littoral rights[5] in the area marked Beach Street, no taking under the law of eminent domain occurred. That should end their inverse condemnation counterclaim. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Regarding the ability of the County to regulate and control the beach area pursuant to the Beach Code, we hold that it may continue to do so because the dedication in the Austin plat placed the beach area permanently in the public domain, complete with all littoral rights.
Fundamentally, this case turns on an interpretation of the plat, and F.C. Austin's intent in dedicating the area labeled as Beach Street to the public.[6] Although the abandonment of a platted street fronting on water may result in an abutting lot owner taking the whole of the fee under the road, and thus becoming a riparian or littoral land owner,[7] the rule regarding lands such as parks dedicated in a plat for multiple use, is different. See Wilson v. Dunlap, 101 So.2d 801 (Fla. 1985).[8] In order to apply the rule governing roads and streets, the court in Wilson said that the trial court must find that the area was intended exclusively for street purposes, or that it was not reasonably susceptible of any but roadway uses, and, accordingly, that no other meaning could be ascribed to the designations on the plat. Wilson, 101 So.2d at 805.
*1190 Although the trial court found in this case that Austin dedicated Beach Street exclusively as a street, we respectfully disagree. Obviously the trial court is in no better position to determine Austin's intent in 1889 than is this appellate court. Any such conclusion has to be based on viewing the plat itself.[9] And, any ambiguity in this regard is construed against the original dedicator and in favor of the public dedication.[10]
Examination of the Austin plat as a whole manifests the clear intent of the dedicator that the land between the lots and the ocean be used for the many purposes customarily incident to use of a beach at that time, including, but certainly not limited to, north-south travel by members of the general public along the boundaries of the property. Brickell, 75 Fla. at 628-33, 78 So. at 683-84. The record shows that the beach area included in the dedication was long used by the public for recreation and transportation purposes. In the record, postcards depict horses and wagons on the sandy beach, before the advent of cars and the construction of A1A, as well as persons walking, bathing and recreating.
Thus, Austin was clearly aware when he platted this property, and when he placed the dedication on the plat, that the beach area was used by the public for recreational purposes, as well as a passage way. And, the unreserved language of his dedication reflects his intent that it be so used in the future by the purchasers of all the lots in his subdivisions and the public. Further, there is no reason to have also platted Wagon Road, a 15-foot alley, adjacent and parallel to Beach Street, if the two areas were intended to be used for the exact same purpose, i.e., as streets.
We conclude that the dedication of "Beach Street" on the Austin plat placed this property, plus all riparian or littoral rights, in the public domain not only for use as a highway or street, but also for use as a public beach for recreation, walking, driving, parking, cooking, fishing, or any other public purpose, subject to reasonable regulation by the appropriate public body. The vacation of Beach Street as a street, thus had no effect on the other public purposes for which the beach area was dedicated.
One important difference between this case and some others involving parks or recreation areas, is that the dedication here was to the general public, not just to the owners of lots in the Coronado subdivision. Other lot owners in Coronado, not fronting the beach, were given access to the beach via the short cross streets that terminated at the area designated Beach Street. However, they have no greater rights to use the beach area in front of the subdivision than do the lot owners involved in this suit, or for that matter, any member of the general public. In Blue Reef Holding Corp. v. Coyne, 645 So.2d 1053 (Fla. 4th DCA 1994), a recreational area was set aside on the plat for the sole use of the residents of the subdivision. In McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953), a recreation area bound by the Gulf of Mexico was dedicated as "Sunnyside Park for the use of the property owners of said plat." Such dedications may create private rights or easements in the owners of lots in the subdivision, or their successors, in addition to public rights acquired by common or ancient usage. However, in this case, there was a clear and unequivocal dedication of the beach area to the general public.[11]
In summary, although the doctrine of customary usage of the sandy beach areas of this state, as annunciated in City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974), offers a potential additional ground to support the trial court's ruling, we do not rely on it. That doctrine requires the courts to ascertain in each case the degree of customary and ancient use the beach has been subjected to and, in addition, to balance whether the proposed use of the land by the fee owners will interfere with such use enjoyed by the public in the past. If there is no private fee owner of the sandy beach area *1191 involved in the case, that doctrine has no application.
AFFIRMED.
PETERSON, C.J., and GRIFFIN, J., concur.
NOTES
[1] Volusia County Home Rule Charter, § 205; Ch. 70-966, Laws of Florida (Special Acts).
[2] Unified Beach Code, § 3.01; Volusia County Ordinance 87-36.
[3] A rough sketch of the topography appears as follows:

[4] See Maloney, Plager & Baldwin, Water Law and Administration, The Florida Experience, § 34, University of Florida Press (1968).
[5] In order to have littoral rights, the lot owners had to establish that they were owners of the uplands bounded by the Atlantic Ocean. See Hayes v. Bowman, 91 So.2d 795 (Fla. 1957); Haynes v. Carbonell, 532 So.2d 746 (Fla. 3d DCA 1988); § 253.141(1), Fla. Stat. (1991).
[6] Bonifay v. Dickson, 459 So.2d 1089 (Fla. 1st DCA 1984).
[7] See Burkart v. City of Ft. Lauderdale, 168 So.2d 65 (Fla. 1964); Bonifay, 459 So.2d at 1095; Maloney, Plager & Baldwin, § 34.
[8] See also Hurt v. Lenchuk, 223 So.2d 350 (Fla. 4th DCA 1969).
[9] Brickell v. Town of Ft. Lauderdale, 75 Fla. 622, 628, 78 So. 681, 683 (1918).
[10] City of Daytona Beach v. Tuttle, 630 So.2d 586 (Fla. 5th DCA 1993); Bonifay, 459 So.2d at 1094; North Lauderdale Corp. v. Lyons, 156 So.2d 690 (Fla. 2d DCA 1963).
[11] Compare City of Tarpon Springs v. Smith, 81 Fla. 479, 88 So. 613 (1921).