The Honorable Charles W. Morris Sheriff, Okaloosa County 1250 Eglin Parkway Shalimar, Florida 32579-1234 The Honorable Craig H. Barker Mayor of Destin 4200 Two Trees Road Destin, Florida 32541
Dear Sheriff Morris and Mayor Barker:
You have asked for my opinion on substantially the following questions:
1. Whether the City of Destin is authorized to apply its beach management ordinance to certain identified dry sand areas of the beach regardless of the ownership or legal control of these areas and regardless of whether the public has been expressly or impliedly allowed use of that area by a private property owner who may hold title to such area?
2. Whether the City of Destin's authority to apply the beach management ordinance to the dry sand portion of the beach is dependent on the existence of a customary right of recreational use by the general public as enunciated by the Supreme Court of the State of Florida in City ofDaytona Beach v. Tona-Rama, Inc.[1]?
3. Whether a private property owner holding title to certain dry sand areas of the beach falling within the area defined as "beach" within the beach management ordinance may utilize local law enforcement and enforcement of state trespass laws to curtail or discourage the public's right of customary use to this same dry sand area of the beach?
In sum:
1. The City of Destin may regulate in a reasonable manner the beach within its corporate limits to protect the public health, safety, and welfare. This regulation must have a rational relation to and be reasonably designed to accomplish a purpose necessary for the protection of the public. The city may not exercise its police power in an arbitrary, capricious, or unreasonable manner. Such regulation may be accomplished regardless of the ownership of this area, with the exception of state ownership, and without regard to whether the public has been expressly or impliedly allowed to use that area of the beach by a private property owner who may hold title to the property.
2. The right of a municipality to regulate and control dry sand beach property within its municipal boundaries is not dependent on the finding of the Florida Supreme Court in City of Daytona Beach v. Tona-Rama, Inc.
3. Private property owners who hold title to dry sand areas of the beach falling within the jurisdictional limits of the City of Destin may utilize local law enforcement for purposes of reporting incidents of trespass as they occur.
According to your letters, the City of Destin has no municipal police force. Rather, the city has contracted with the Okaloosa County Sheriff's Department for the provision of law enforcement services within the city limits.
The city has recently adopted a beach management ordinance, Ordinance No. 350, to provide for the regulation of public use and conduct on the beach. The beach management ordinance applies to the "beaches" within the city limits, which are defined as "the soft sand portion of land lying seaward of a retaining wall, seawall, or line of permanent vegetation and landward of the mean high water line."[2] The beach management ordinance specifically regulates a number of categories of use and conduct on the beach. Examples of regulated use and conduct are a prohibition on the possession of glass containers; restrictions on animals on the beach; restrictions on wheeled vehicle use; prohibition of open fires; prohibition of overnight camping; outlawing of shark fishing by chumming or blood baiting; prohibition of use of aircraft on the beach; and regulation of sound amplification.[3] The ordinance also outlaws breach of the peace and disorderly conduct and prohibits littering and removal of sand.[4]
The city's beach management ordinance does not expressly specify that it be applied only on public land or land on which the public has been expressly granted a right of use and access. You recognize, therefore, that the ordinance as written applies to all areas falling within the definition of "beach," regardless of whether such areas are located on public or private property and regardless of whether the public has been expressly or impliedly allowed to use such areas by a private property owner.
Question One
Your first question deals with municipal regulation of privately owned real property within jurisdictional boundaries.
Section 2(b), Article VIII, Florida Constitution, provides that:
"Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. . . ."
The Florida Supreme Court has stated that this constitutional provision "expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services."[5] The court stated, in the City of Sunrise case, that the only limitation on the power of municipalities under this constitutional section is that such power must be exercised for a valid municipal purpose. As determined by the court, "[l]egislative statutes are relevant only to determine limitations of authority" and municipalities need no further authorization from the Legislature to conduct municipal government.[6] Section 166.021(1), Florida Statutes, grants municipalities "the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and [to] exercise any power for municipal purposes, except when expressly prohibited by law."
Generally, a municipality has civil and criminal jurisdiction over property within its corporate boundaries and may thus regulate and restrict certain activities reasonably calculated to protect the public health, safety, and welfare.[7] This municipal regulatory power is subject to the state's paramount power to regulate and control the use of its sovereign lands. To the extent that any regulation has been preempted by the state or is inconsistent with general law or with regulations adopted by the state, any attempted municipal regulation would be invalid.[8] Further, valid municipal regulations must be reasonable and nondiscriminatory, and they must tend to promote the public health, safety, morals, or general welfare.[9]
An additional limitation on a municipality's power to regulate in this area and a corollary to the requirement that these regulations must further the public health, safety, and welfare is the requirement that such regulation not violate the constitutional protections afforded to the public for the use of and access to state sovereignty lands.[10]
Thus, it is my opinion that the City of Destin may regulate in a reasonable manner the beach within its corporate limits to protect the public health, safety, and welfare if this regulation has a rational relation to, and is reasonably designed to accomplish, a purpose necessary for the protection of the public. The city may not exercise its police power in an arbitrary, capricious, or unreasonable manner. It may not exercise its police power over those activities or subjects and in those areas that have been preempted to the state or that are in conflict with the state's paramount power to regulate and control its sovereign lands held in trust for all the people of the state; nor may it arbitrarily restrict or abrogate constitutionally recognized and protected "trust doctrine" rights.[11]
Question Two
You ask whether the City of Destin's authority to apply its beach management ordinance to areas within the city's jurisdictional boundaries is dependent on the Florida Supreme Court's decision in City of DaytonaBeach v. Tona-Rama, Inc. As indicated by my response to Question One, the city has civil and criminal jurisdiction over property within its corporate boundaries, and thus has the power to regulate and restrict activities reasonably calculated to protect the public health, safety, and welfare. This conclusion is not dependent on the Florida Supreme Court's decision in the Tona-Rama case.
The Tona-Rama case recognizes the common law principle of "customary use" by the public of Florida's dry sand beaches. The court held that if the public's recreational use of a privately owned sandy area adjacent to the mean high tide has been ancient, reasonable, without interruption, and free from dispute, such use, as a matter of custom, should not be interfered with by the owner. However, the owner is allowed to make any use of his property that is consistent with such public use and is not calculated to interfere with the exercise of the right of the public to enjoy the dry sandy area as a recreational adjunct of the wet sand or foreshore area, which is held by the state in trust for the people.[12]
In Tona-Rama the defendant owned waterfront property in Daytona Beach on which he operated an ocean pier as a recreation center and tourist attraction. He secured a permit for and constructed an observation tower on an area of dry sand on his property. The observation tower was a part of the pier and could only be entered from the pier.
The plaintiff operated an observation tower near the site of defendant's pier and protested the issuance of the permit. Plaintiff alleged that by continuous use of the property for more than twenty years, the public had acquired an exclusive prescriptive right to use the defendant's land.
While the Court has recognized such a right under proper circumstances, it rejected the notion of a prescriptive right under the facts presented by the Tona-Rama case. As the court noted,
"If the use of an alleged easement is not exclusive and not inconsistent with the rights of the owner of the land to its use and enjoyment, it would be presumed that such use is permissive rather than adverse. Hence, such use will never ripen into easement."[13]
While the court rejected a finding of a public easement in the property, it acknowledged the historical right of the public to use Florida's beaches:
"We recognize the propriety of protecting the public interest in, and right to utilization of, the beaches and oceans of the State of Florida. No part of Florida is more exclusively hers, nor more properly utilized by her people than her beaches. And the right of the public of access to, and enjoyment of, Florida's oceans and beaches has long been recognized by this Court."[14]
The court recognized the "customary rights doctrine" or "customary right of use doctrine" as it is employed to afford the public full use of beach property in Florida:
"If the recreational use of the sandy area adjacent to mean high tide has been ancient, reasonable, without interruption and free from dispute, such use, as a matter of custom, should not be interfered with by the owner. However, the owner may make any use of his property which is consistent with such public use and not calculated to interfere with exercise of the right of the public to enjoy the dry sand area as a recreational adjunct of the wet sand or foreshore area."
This right of customary use of the dry sand area of the beaches by the public does not create any interest in the land itself. Although this right of use cannot be revoked by the land owner, it is subject to appropriate governmental regulation and may be abandoned by the public.[15]
The court concluded:
"The general public may continue to use the dry sand area for their usual recreational activities, not because the public has any interest in the land itself, but because of a right gained through custom to use this particular area of the beach as they have without dispute and without interruption for many years."[16]
In any particular case, however, whether this "customary right of use" exists in a particular piece of property is a mixed question of law and fact that must be resolved judicially. As the Fifth District Court of Appeal recently recognized in the case of Reynolds v. County of Volusia,[17] "[t]hat doctrine requires the courts to ascertain in each case the degree of customary and ancient use the beach has been subjected to and, in addition, to balance whether the proposed use of the land by the fee owners will interfere with such use enjoyed by the public in the past."[18]
The right of a municipality to regulate and control dry sand beach property within its municipal boundaries is not dependent on the finding of the Florida Supreme Court in City of Daytona Beach v. Tona-Rama, Inc. However, that case establishes the "customary use" doctrine in Florida, which may be relied on and would provide direction in cases involving private property rights and trespass.
Question Three
Your third question relates to the use of local law enforcement by private property owners to enforce trespass laws to curtail or discourage the public's right of customary use to the dry sand areas of the beach.
The City of Destin is authorized to regulate the dry sand portions of the beach within its jurisdictional boundaries under the terms discussed above. However, portions of this property are subject to private ownership and until a court establishes a "customary right of use" by the public in such real property, the fee owners thereof may make complaints of trespass to local law enforcement officers as they occur.
Pursuant to section 810.09(1)(a), Florida Statutes, "[a] person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance . . . [a]s to which notice against entering or remaining is given . . . commits the offense of trespass on property other than a structure or conveyance.[19]
Section 810.09(2)(b), provides that:
"If the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person . . . the offender commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083."[20]
Thus, to commit a trespass, the offender must defy an order to leave that has been personally communicated to him by the owner of the premises or some other authorized person.
This office, in Attorney General's Opinion 90-08 considered whether on-duty police officers could be pre-authorized to act as the agents of a private landowner for the purpose of communicating to alleged trespassers an order to leave the private property pursuant to section 810.09(2)(b), Florida Statutes. The facts of that opinion involved the Jupiter Inlet Beach Club, Inc., which owned a parcel of land within the Town of Jupiter Inlet Colony. Access to the lands and the facilities located thereon was limited to members and guests of the private club. Representatives of the club proposed to authorize, in advance of any actual incident, all town police officers to act as the club's agent in ordering alleged offenders to leave the beach club's premises. This office rejected the proposal to authorize local law enforcement officers to be designated as the agents of private persons. As the opinion noted, the Florida Constitution prohibits the use of public funds for a private purpose.[21] The pre-authorization of on-duty law enforcement officers to act as agents of private landowners in warning individuals to leave private property appeared to this office to serve primarily a private, not public, purpose.
Thus, it is my opinion that private property owners who hold title to dry sand areas of the beach falling within the jurisdictional limits of the City of Destin may utilize local law enforcement for purposes of reporting incidents of trespass upon their property on a case-by-case basis. However, local law enforcement officers may not be pre-authorized to act as agents of private landowners for the purpose of communicating orders to their property on a case-by-case basis. However, local law enforcement officers may not be pre-authorized to act as agents of private landowners for the purpose of communicating orders to leave private property to alleged trespassers pursuant to section 810.09(2)(b), Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] 294 So.2d 73 (Fla. 1974).
[2] City of Destin Ordinance No. 350, s. 6D.
[3] See, id., s. 7A-F, I and K.
[4] See, supra n. 2, s. 7L-N.
[5] State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978).
[6] Supra at 1209. See also, City of Miami Beach v. Forte Towers,Inc., 305 So.2d 764 (Fla. 1974).
[7] See, 64 C.J.S. Municipal Corporations s. 1816 (1950); Carter v.Town of Palm Beach, 237 So.2d 130 (Fla. 1970); City of Miami Beach v.Texas Co., 194 So. 368 (Fla. 1940); Metropolitan Dade County v. Pierce,236 So.2d 202 (Fla. 3d DCA 1970); and Ops. Att'y Gen. Fla. 96-49 (1996), 85-47 (1985), 79-71 (1979), 77-139 (1977) and 60-139 (1960).
[8] See, s. 166.021, Fla. Stat.; City of Miami Beach v. Forte Towers,Inc., 305 So.2d 764 (Fla. 1974); and Ops. Att'y Gen. Fla. 78-141 (1978), 75-167 (1975), and 74-286 (1974).
[9] See, 64 C.J.S. Municipal Corporations s. 1818c, p. 301 (1950).
[10] See, Art. X, s. 11, Fla. Const. (title to land under navigable waters within boundaries of state which have not been alienated are held by the state by virtue of its sovereignty in trust for all the people);McDowell v. Trustees of Internal Improvement Fund of State of Florida,90 So.2d 715 (Fla. 1956); White v. Hughes, 190 So. 446 (Fla. 1939); Op. Att'y Gen. Fla. 79-71 (1979) (foreshore area of beaches between mean high and low water marks and under Ch. 161 area seaward of beach erosion control line, the traditional uses for which are fishing, swimming, boating and other public purposes authorized by law, are held in trust for the public.) And see, Carter v. Town of Palm Beach, 237 So.2d 130
(Fla. 1970), wherein the Court held that while the town may regulate and control surfing and skimming in areas subject to its jurisdiction and may prohibit these activities at certain places along the beach, the complete prohibition of this sport is arbitrary and unreasonable.
[11] See, AGO's 96-49 (1996) (municipality may prohibit unauthorized trespass on or unauthorized mooring of boat to privately-owned dock located on state-owned submerged lands within municipal corporate limits); 92-86 (1992) (county may regulate dogs on the beach); 79-71 (1979) (municipality may enact ordinance to control beach erosion in area of beach within its territorial limits).
[12] See, 294 So.2d at 78.
[13] Id. at p. 76.
[14] Supra n. 12 at p. 75.
[15] Supra n. 12 at p. 78.
[16] Supra n. 12 at p. 78.
[17] 659 So.2d 1186 (Fla. 5th DCA 1995).
[18] Id. at 1190.
[19] s. 810.09(1)(a)1. and 2., Fla. Stat.
[20] The Supreme Court of Florida has stated that "'[c]ommon understanding' dictates that the phrase `other authorized person' is to be read in light of the preceding phrase `owner of the premises' . . . . In regard to private land, an `authorized person' is one who receives either express or implied authorization from the owner. See, State v.Dye, 346 So.2d 538, 541 (Fla. 1977).
[21] Article VII, s. 10, Fla. Const.