The complainant was the owner of a mortgage upon three tracts of land described as follows: *Page 732 
"All that certain lot, tract or parcel of land and premises situate, lying and being in the city of Ventnor City, county of Atlantic and State of New Jersey:
Beginning at the northerly line of Monmouth avenue, 52 feet east of the easterly line of Margate Park; thence (1) eastwardly, along the northerly line of Monmouth avenue, 25 feet; thence (2) northwardly, parallel with Margate Park, 100 feet, more or less, to line of Inside Thoroughfare; thence (3) westwardly, along line of Inside Thoroughfare, 25 feet to a point distant 52 feet east from the easterly line of Margate Park, measured at right angles thereto; thence (4) southwardly, parallel with Margate Park, 100 feet, more or less, to northerly line of Monmouth avenue and place of beginning.
No. 2 — Beginning at the Northeast corner of Wyoming avenue (formerly Margate Park) and Monmouth (formerly Mediterranean) avenue, and extending thence (1) eastwardly, along the northerly line of Monmouth avenue 26 feet; thence (2) northwardly, parallel with Wyoming avenue, 150 feet to the commissioners' exterior wharf line in Inside Thoroughfare; thence (3) westwardly, along said exterior wharf line, parallel with Monmouth avenue, 26 feet to the easterly line of Wyoming avenue; thence (4) southwardly, along said easterly line of Wyoming avenue, 150 feet to the place of beginning.
No. 3 — Beginning in the northerly line of Monmouth (formerly Mediterranean) avenue, 26 feet eastwardly from the easterly line of Wyoming avenue (formerly called Margate Park), and extending thence eastwardly, along said northerly line of Monmouth avenue, 26 feet in front or width; thence northwardly between parallel lines of that width, parallel with Wyoming avenue, 100 feet, more or less, in depth, to high water line of Inside Thoroughfare.
Together with all and singular the buildings, improvements, woods, ways, rights, liberties, privileges, hereditaments and appurtenances, whatsoever to the same belonging, or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."
This mortgage was foreclosed and at a sale the premises were purchased by the complainant for the sum of $500, and on or about the 15th day of October, 1927, the complainant entered into possession of the premises.
Prior to the foreclosure of this mortgage, the State of New Jersey granted to Frank J. Pedrick Son the riparian rights in the said Inside Thoroughfare adjoining the premises owned by them, the said Frank J. Pedrick Son, included in which were the riparian rights adjoining the premises described in complainant's mortgage.
The complainant alleges that the lands adjoining the mortgaged premises and included in said grant are bounded and described as follows: *Page 733 
"All that certain lot, tract or parcel of land and premises situate, lying and being in the city of Ventnor City, county of Atlantic and State of New Jersey.
Beginning at a point in the northeast line of Wyoming avenue (and Wyoming avenue extended) 150 feet northwestwardly of the northeast corner of Monmouth and Wyoming avenues; extending thence (1) northwestwardly, in and along said northeast line of Wyoming avenue and Wyoming avenue extended, 227 feet, more or less, to a point in the center line of Inside Thoroughfare, located midway between the high water lines of the northwest and southeast shores of said thoroughfare, the location of the high water lines being taken from the actual survey made in December, 1922, and January, 1923, by the New Jersey state board of commerce and navigation; thence (2) northeastwardly along said center line of thoroughfare 77.88 feet, more or less, to a point distant 388.65 feet northwest of the northerly line of Monmouth avenue, measured on a line at right angles thereto; thence (3) southeastwardly, parallel with Wyoming avenue 288.65 feet, more or less, to the point 100 feet northwestwardly of the northerly line of Monmouth avenue; thence (4) southwestwardly, parallel to the northerly line of Monmouth avenue 51 feet; thence (5) northwestwardly, parallel with Wyoming avenue 50 feet; thence (6) southwestwardly, parallel with Monmouth avenue, 26 feet to the point and place of beginning.
The said riparian rights, together with a great deal of other property, were sold by Frank J. Pedrick Son to the Ventnor Gardens, Incorporated, and the said Inside Thoroughfare was filled in, at a cost and expense of $250,000 or more.
The allegation of the bill is that the mortgage covered not only the lands therein described but included all the right, title and interest which the owner of the ripa, at the date of said mortgage, had in the lands under water, and that when the State of New Jersey made its grant, the land under water, adjacent to the premises in the mortgage, became, by reason thereof, subject to the lien of the mortgage.
Complainant prays that said defendants may be decreed to pay complainant the amount so found due, with interest and costs, by a short day to be appointed by this court; and that, in default of such payment they be debarred and foreclosed of all equity of redemption in the lands last above described.
I was, at the time of the hearing, requested to make no disposition of this case, as it was believed the matter could be amicably adjusted between the parties. On the 4th day of *Page 734 
March, 1930, I received a communication from counsel stating that they had been unable to agree and requesting me to proceed.
The United States supreme court, in Mayor and Council of theCity of Hoboken v. Pennsylvania Railroad Co., and five similar cases in 124 U.S. Rep. 656, adversely disposed of a situation similar to the complainant's contention. In that case, it was held:
"Under the riparian laws of New Jersey, the lands below high water mark, constituting the shore and submerged lands of the navigable waters of the state, were the property of the state as sovereign.
"The title and interest of the state in these shore lands, under the state laws, is a distinct and separate estate, to be dealt with and disposed of in accordance with the terms of the statutes, either by a sale and conveyance to the riparian owner himself or his assignees, or, in case of his or their neglect to take from the state its grants on the terms offered, then to a stranger, who, succeeding to the state's title, would have no relation to the adjacent riparian owner, except that of a common boundary.
"The title under the New Jersey grants is not only a new estate, but is a new subject divided from the upland or riparian property by a fixed and permanent boundary. Such grants are of the estate in the land and not of a mere franchise or incorporeal hereditament.
"Under these grants the land conveyed is held by the grantees on the same terms on which all other lands are held by private persons under absolute titles; and every previous right of the State of New Jersey therein, whether proprietary or sovereign, is transferred or extinguished, except such sovereign right as the state may lawfully exercise over all other private property."
The opinion of Judge Nixon in the circuit court of the United States for the district of New Jersey, which was affirmed by the opinion above cited, states the points decided as follows:
"Where a proprietor of land bordering upon a navigable *Page 735 
river dedicated a portion of such lands to a town for the purposes of public highways, and the same was delineated on a map as extending to the high-water mark of the river, as it existed at the time of the grant, held, that no part of the land or water adjoining said lands, and lying below high-water mark, as it then existed, passed to the town or was made subject to any easement by any such dedication or grant, since all such land lying below high-water mark belongs to the state and could only be dedicated or subjected to an easement by the state or its grantees."
"Soil acquired and redeemed from the water by filling in is in no sense alluvion or accretion which would become the property of the shore owner, but is the property of the state or its grantees, in whom the title to the land between high and low water mark is; and no right exists in the shore owner, who had dedicated to the public streets to the limit of his ownership, to charge such newly-made land with the burden of an easement over it."
Following the reasoning of Judge Nixon and Mr. Justice Matthews, it is apparent that the lien of the mortgage extended no further than the land described therein, and that the lands under water thereafter acquired from the state, in the condition as acquired or as thereafter filled in, were not subject to the lien of the mortgage.
A decree dismissing the bill will be advised. *Page 736