This matter comes to me on an order of reference after exceptions to a master's report, which report was based on testimony taken ex parte.
Complainant filed a bill to foreclose and, no defense to the mortgage having been urged by any answering defendants, the matter was referred to a special master.
The facts are briefly these:
The bill to foreclose covered a lot in Ventnor City, New Jersey, having a frontage of thirty-eight feet and of that width to the high water line of Inside Thoroughfare, a navigable stream in which the tide ebbed and flowed. The mortgage was dated December 2d 1926, and was executed by *Page 581 
Mulford T. Rose and his wife, Roberta C. Rose, to complainant's husband, now deceased.
Complainant's proof, before the master, established that at the time of the execution of the mortgage the land in front of the mortgaged premises below high water line of Inside Thoroughfare was not filled and that the land in front of the property so mortgaged did not cease to be land under water until long after the making, execution and record of the mortgage. It also appeared before the master that the mortgagor and his wife had entered into an agreement prior to the making of the mortgage, under which the mortgagors consented to the filling in of Inside Thoroughfare by one Pedrick, in order that a plaza might take the place of the thoroughfare or stream, this plaza to extend not only along the rear end frontage of the mortgaged premises, but between Portland and Washington avenues (a considerable distance). In order to accomplish the fill, it was necessary that a grant of the lands covered by water be obtained from the state. This grant Pedrick obtained and it was executed and recorded after the execution and record of complainant's mortgage. Pedrick proceeded to fill in the land covered by the grant, so that the lands theretofore flooded by tidal waters were no longer covered thereby.
Pedrick then conveyed all of the land covered by the riparian grant to Ventnor Gardens, Incorporated, and Ventnor Gardens, Incorporated, conveyed thirty-eight by one hundred feet of said lands covered by the riparian grant, immediately abutting complainant's mortgaged premises, to Roberta C. Rose (wife of Mulford T. Rose), on April 14th, 1927, all in pursuance of the agreement aforesaid; that thereafter, in June of 1929, after record of complainant's mortgage, Roberta C. Rose and Mulford T. Rose conveyed the mortgaged premises, together with the lands covered by the riparian grant aforesaid, to one Bunn.
Complainant's bill was filed December 13th, 1932, so at the time of the filing of the bill and the placing of the lispendens upon record, Bunn was the owner of the mortgaged premises (the upland), as well as the filled land (riparian *Page 582 
grant to the extent of thirty-eight by one hundred) which, at the time of the execution of complainant's mortgage (as heretofore said) was a navigable stream in which the tide ebbed and flowed.
The question presented is whether the filled land, which was land under water at the time of the placing of complainant's mortgage, is subject to the lien of complainant's mortgage. The master decided that it was not.
Complainant relies on the case of Boon v. Kent, 42 N.J. Eq. 131,
and Point Breeze Ferry and Improvement Co. v. Bragaw,47 N.J. Eq. 298.
Taking up the Boon v. Kent Case first, we find that the description of the land mortgaged, after describing it, concluded:
"With all the land attached and appertaining thereto, known as sand beach and guard, down to low water mark" in the river and creek.
It also appeared that: "the owners of the property had * * * exercised the right of fishing, under a claim of several fishery, along the whole front of the property on both the river and creek, from time immemorial. They also claimed the exclusive right to take sand from the bars."
In the Point Breeze Ferry and Improvement Co. v. BragawCase, the description contained the following language:
"Including all land lying under water in the New York bay in front of the upland embraced within the aforesaid boundaries."
In the first above cited case, the court held that subsequent grants by the riparian commission inured to the benefit of the mortgagee and that such grants could not be set up by way of defense to a bill to foreclose the mortgage and thus exclude the grant from the premises to be sold under the foreclosure.
In the second case, the court held:
"On foreclosure of a mortgage given by a riparian owner covering the shore and including the land lying under water in front of the upland, which was afterwards leased from the state and improved by filling below high water mark, before *Page 583 
the sale is ordered, the rights of the mortgagee in the land that was submerged at the time the mortgage was given and has since been reclaimed, should be defined," and that the purchaser of the lease of the land under water, who had reclaimed it by filling, had the higher title and superior right to be first paid the price of such purchase and the value of the improvement before it should be sold to pay and satisfy the amount secured by the mortgage. This ruling was an affirmance of the doctrine of the case of Boon v. Kent, supra, i.e., that the riparian grant inured to the benefit of the mortgagee.
In the case sub judice, the description of the property in the mortgage is:
"Beginning in the Northeast corner of Monmouth Avenue and Rosborough Park; thence (1) Eastwardly, in the Northerly line of Monmouth Avenue, thirty-eight feet; thence (2) Northwardly, parallel with Rosborough Park, one hundred feet more or less to Inside Thoroughfare; thence (3) Westwardly, along line of Inside Thoroughfare," c.
It will be observed that the description as above recited differs from the descriptions in the mortgages discussed in the above cases, in that the high water line of Inside Thoroughfare is the limit of the conveyance, while in the Boon v. KentCase the description was "down to low water mark" and in thePoint Breeze Ferry and Improvement Co. v. Bragaw Case, the description was "including all land lying under water in front of the upland."
It is argued that no matter what the description may have been in the mortgages under consideration in the earlier cases, the parties to those mortgages could not have contemplated a conveyance of the lands between high and low water because title thereto was in the state, and that the descriptions in the mortgages simply followed the then custom in conveyancing along navigable waters, i.e., to low water. It was suggested that the question of ownership of the land between high and low water line was in some confusion. This cannot be, because the courts of New Jersey, in Stevens v. Paterson and Newark Railroad Co.,34 N.J. Law 532, decided in 1870, *Page 584 
had finally settled the law with respect thereto by holding that the fee was in the state and, by so doing, had eliminated any confusion that may have theretofore existed by reason of Arnold
v. Mundy, 6 N.J. Law 1, or Bell v. Gough, 23 N.J. Law 624, in the former of which the court declared the title to be in the state as trustees for the people and not subject to alienation, and, in the latter of which the title was declared to be in the state, recognizing, however, rights of the riparian proprietors in the land below high tide.
The conveyances in Boon v. Kent and Point Breeze Ferry andImprovement Co. v. Bragaw, therefore, must have been made with full knowledge of the title of the state, and the court in those cases held that the grants inured to the benefit of the mortgages under the circumstances then before the court.
In Moore v. Ventnor Gardens, Inc., 105 N.J. Eq. 730, the late Vice-Chancellor Ingersoll had a situation to deal with which involved the same tract of land as that here under consideration, and involved a like filling in of the thoroughfare, thus excluding the water and converting the land which had formerly been covered by water to fast land, and he held:
"1. Under the riparian laws of New Jersey, the lands below high water mark, constituting the shores and submerged lands of the navigable waters of the state, were the property of the state as sovereign.
"2. The title and interest of the state in these shore lands, under the state laws, is a distinct and separate estate, to be dealt with and disposed of in accordance with the terms of the statutes, either by a sale and conveyance to the riparian owner himself or his assignees, or, in case of his or their neglect to take from the state its grants on the terms offered, then to a stranger, who, succeeding to the state's title, would have no relation to the adjacent riparian owner, except that of a common boundary.
"3. The title under the New Jersey grants is not only a new estate, but is a new subject divided from the upland or riparian property by a fixed and permanent boundary. Such grants are of the estate in the land and not of a mere franchise or incorporeal hereditament. *Page 585 
"4. A proprietor of land bordering upon a navigable stream, having no grant from the State of New Jersey for riparian rights, executes a mortgage upon said lands, describing them by metes and bounds, and extending only to such stream; the mortgagor's assignees obtain from the state a riparian grant upon the lands under water in said stream adjoining said premises, together with a large amount of other lands under water in said stream — said stream being thereafter entirely filled in and made upland — held, that the lien of the mortgage extended no further than the land described therein and that the lands under water acquired from the state were not subject to the lien of the mortgage."
The above cited case was sustained by the court of errors and appeals. 109 N.J. Eq. 132.
The principle contended for by complainant, which she says prevents the application of the decision in Moore v. VentnorGardens, Inc., and requires the application of the decisions inBoon v. Kent and Point Breeze Ferry and Improvement Co. v.Bragaw, supra, is that when one makes a deed and warrants the title and afterwards acquires an outstanding interest, he is estopped from setting up the outstanding interest against the grantee, or to put it as stated by the then Mr. Justice Gummere in Tully v. Taylor, 84 N.J. Eq. 459 (at p. 462):
"Whatever may be the effect of ordinary deeds of conveyance without warranty in concluding a grantor, who has released or conveyed without interest, yet, in relation to mortgages, the question is well settled. By an equitable estoppel, based upon the legal fraud which would be otherwise permitted, one who mortgages land as his own, upon suit thereupon brought against him, shall not be permitted to derogate from his own mortgage, by denying his title or by setting up title in any third person."
As before noted, title to the riparian lands did come back to Mrs. Rose.
The difficulty with complainant's contention is that the mortgage in question does not cover the lands subsequently acquired by the riparian grant. They were, at the time of *Page 586 
the execution of the mortgage, as said by Vice-Chancellor Ingersoll, "a distinct and separate estate" and "the title under the New Jersey grants is not only a new estate, but is a new subject divided from the upland or riparian property by a fixed and permanent boundary."
There was, therefore, no fraud on the part of the mortgagors and there cannot, therefore, be an estoppel as against them, nor are they in this suit "derogating from their own mortgage by denying title."
The result is that the exceptions will be dismissed and the report of the master will be sustained.