ON MOTION FOR REHEARING
PER CURIAM.
Upon consideration of appellee’s (Destín Yacht Club Owners Association, Inc.) motion for rehearing, we withdraw this court’s previous opinion and substitute the following clarified opinion. The motion for rehearing is denied in all other respects.
This case involves a controversy between the Destín Yacht Club Owners’ Association (“Association”) and Legendary, Inc., owner of a commercial parcel associated with the Destín Yacht Club, or the Associated Commercial Parcel (“ACP”), concerning the right to hold a submerged land lease, a question ultimately to be decided by the Department of Environmental Protection (“DEP”). The Association owns and operates the condominium portion of the Destín Yacht Club, and is responsible for operating and maintaining the marina. The ACP actually abuts the water and separates the harbor and marina from the condominium portion of the property. Legendary operates two restaurants on the ACP. Currently, the Association holds the submerged land lease, which the developer conveyed to it. The marina is not part of the shared use area of the property; however, the operating agreement refers to certain marina expansion rights on behalf of the ACP owner. Legendary sought modification of the lease in order to construct a commercial docking facility. The DEP notified the Association of its intention to cancel the lease unless the Association demonstrated a sufficient interest in the upland property. The Association sought a declaratory judgment concerning its riparian rights.
The parties submitted cross motions for summary judgment. At hearing, they represented that they recognized both had some riparian[1] rights, but needed a determination of whose rights were superior, particularly as to the right to wharfing, so as to be entitled to hold the submerged land lease. While the court initially expressed some reluctance to grant summary judgment, the parties represented that they had presented all pertinent information and summary judgment was appropriate. The court granted summary judgment in favor of the Association, and ruled that the Association held all riparian rights exclusively, except the right to retail sales on the marina dock.
Appellant initially contends that the trial court erred in considering evidence extrinsic to the governing documents based on a finding of latent ambiguity in the pertinent documents for the reason that those documents did not specifically treat the issue of riparian rights. We agree that no latent ambiguity existed due to the failure to use or explain that term, because absent severance of riparian rights, those rights remain with the upland owner. See generally Belvedere Development Corp. v. Department of Transportation, 476 So.2d 649 (Fla.1985); Haynes v. Carbonell, 532 So.2d 746 (Fla. 3d DCA 1988). Therefore the use of extrinsic evidence was improper. See U.S. on Behalf of Small Business Administration v. South Atlantic Production Credit Association, 606 So.2d 691 (Fla. 1st DCA 1992). Reversal is not required on that basis, however, because given the lack of ambiguity, the interpretation of the pertinent agreements is a question of law, and this court is on equal footing with the trial court in resolving that question. See Geiger v. Geiger, 632 So.2d 693 (Fla. 1st DCA 1994).
“It is generally held that riparian rights may be separated from the ownership of the land to which they are appurtenant, either by a grant of such rights to another, or by a reservation thereof in the conveyance of the *625 land.” See 78 Am.Jur.2d “Waters” § 278. Four documents are critical to resolving the question of who has superior riparian rights: the declaration of condominium, the deed to the ACP, the operating agreement, and the marina agreement. The deed and declaration are subject to the operating agreement, which defines respective rights and obligations in the shared use of the property. The operating agreement defines “owners” of the property, excepting the ACP, as the Association. It further provides that the Association is responsible for maintenance and operation of the marina in accordance with the marina agreement, which was attached as an exhibit to the declaration of condominium when that document was recorded. The operating agreement specifies certain commercial rights in the marina that belong to the ACP owner: the right to use two boat slips and one additional space appurtenant to a condominium unit, the exclusive right to retail sales, and the right to build a structure at the end of the marina dock for that purpose. In addition, the operating agreement describes potential marina expansion as follows: “The Developer may enter into a joint venture with the owner of the [ACP] for the expansion of the marina. If the developer does not wish to assume responsibility for the expansion of the marina the owner of the [ACP] shall be assigned such expansion right.”
The marina agreement specifically provides that the submerged land lease held by the developer would be assigned to the Association after. development, and that assignment has occurred. It further provides that the marina is intended for ingress and egress, marina facilities, and utilities for the “use, benefit and enjoyment of the owners of the [condominium] units,” subject to the rights of several named prior boat slip owners and the commercial boat slip owner as set forth in the operating agreement.[2] The deed to the ACP owner included an exception from warranty for the “rights, if any, of ... other riparian owners in and to that part of the land lying below the mean high water mark of East Pass Lagoon.”
In its brief, Legendary conceded that the Association has certain riparian rights as the result of easements of ingress and egress granted in the operating agreement. At oral argument of this case, the Association conceded that, contrary to the trial court’s ruling, it does not hold all riparian rights to the property exclusively; rather, those riparian rights associated with the property under the easement belong to both parties.[3] Appellee contends, however, that it holds the right to wharfing exclusively by virtue of the various agreements, particularly the operating and marina agreements. In essence, the focus of this controversy has been narrowed to the riparian right to wharfing.
Based on our reading of the pertinent provisions of the governing documents, we conclude that, with regard to wharfing, the Association’s right is superior. It is intended to be exclusive, except to the extent necessary to give effect to the marina expansion rights set forth in the operating agreement, which requires the parties “to cooperate to expand the Marina and increase the number of available boat slips” in the event the State of Florida grants permission to expand the marina.[4] The applicable agreements make the Association responsible for the operation and maintenance of the marina, spelling out that the marina facilities are primarily for the use and benefit of the condominium owners. Perhaps the most significant indicator of intent to sever the bulk of the rights to wharf-ing from the upland property is that.the agreement calls for the assignment of the lease to the Association.
*626 Therefore, the summary judgment for the Association must be modified to reflect the concession as to non-exclusive riparian rights, and to reflect our ruling that although the Association has superior wharfing rights, an exception must be made so that Legendary may exercise marina expansion rights provided for in the operating agreement.
We affirm the granting of summary judgment in favor of the Association as modified. In addition, we strike from the final order the findings as to the constructive trust issue found in the last full paragraph on page 17 of the order and continuing on page 18, as it is unnecessary and inconsistent with the ruling that the constructive trust issue is moot.[5]
BOOTH, JOANOS and VAN NORTWICK, JJ., CONCUR.

. The parties apparently agreed to use the term "riparian” while recognizing that the technically correct term is littoral.

. The marina agreement was an exhibit to the recorded declaration of condominium, which was executed by the developer and the Association. At that time, ownership of the ACP had not yet passed from the developer to Legendary’s predecessor. Thus the ACP owner had notice of the marina agreement.

. Legendary also contends that it holds the rights of accretion and reliction exclusively, and the Association does not appear to challenge that assertion.

.Until January 1, 1988, marina expansion rights were exclusive to the developer under the marina agreement. After that time, under the operating agreement, marina expansion rights were no longer exclusive to the developer, but also belonged to the ACP owner.

. In addition, the order must be corrected to reflect that the right to retail sales is not a riparian right.