920 A.2d 638

JOSEPH PANETTA, PLAINTIFF–APPELLANT, v. EQUITY ONE, INC., DEFENDANT–RESPONDENT.

ANNE COVEY, PLAINTIFF–APPELLANT, v. EQUITY ONE, INC., DEFENDANT–RESPONDENT, AND JOSEPH D. CORVAIA, HOWARD W. SMITH AND JOHN DOE(S), DEFENDANTS.

Argued January 3, 2007—Decided May 1, 2007.

308

*Christopher J. LaMonica,* argued the cause for appellant Joseph Panetta.

*George Dougherty, Michael S. Morris* and *Anne Covey*, pro se, argued the cause for appellant Anne Covey (*Covey & Associates* and *Katz & Dougherty*, attorneys).

*Michael J. Milstead*, argued the cause for respondent (*Milstead & Associates*, attorneys).

*Michael J. Fasano*, argued the cause for *amicus curiae* New Jersey Land Title Association (*Lomurro, Davison, Eastman & Munoz*, attorneys).

*Jeffrey A. Oshin; Joshua A. Burkhardt* and *Kurt R. Bachman*, members of the Indiana bar, submitted a brief on behalf of *amicus curiae* National Auctioneers Association (*Hardin, Kundla, McKeon & Poletto*, attorneys).

Justice LONG delivered the opinion of the Court.

The primary issue in this appeal is whether a conveyance of real property that makes no mention of an abutting riparian grant can be construed under *N.J.S.A.* 46:3–16 to include that grant as an appurtenance. Unlike a riparian right, which is a license or privilege, a riparian grant is a conveyance in fee simple of real property. As such, without specific mention in the deed or other evidence that the parties intended its inclusion, a riparian grant will not pass as appurtenant to another distinct parcel.

I.

Beginning in 1943, several generations of the Francis family owned the property located at 633 Point Avenue, Brick Township, which consisted of an upland lot designated as Block 934, Lot 23.01 and a riparian grant separately designated as Block 934, Lot 23.03 on the municipal tax map. The riparian grant was created in 1928 and was recorded in Deed Book 781, page 481, in the Ocean County Clerk's Office.

As of 1992, the property was owned by Rowina Schoener Francis and her son George Francis. On April 6th of that year, Rowina and George deeded the property to themselves and to

George's wife Carolyn Francis. That deed specifically included and described the upland lot and the riparian grant as tract one and tract two, respectively.

Several years later, in 1995, George was operating a business that was struggling financially. As a result, he applied for a loan from Equity One, Inc. (Equity One), using the property as security. During the application process, George, Carolyn, and Rowina deeded their interest in the upland property to George and Carolyn. That deed, dated March 22, 1995, did not mention the adjacent riparian grant (Lot 23.03) but only described the property as Lot 23.01, Block 934 on the tax map and also contained a metes and bounds description of only the upland lot as provided by the title company.

On March 23, 1995, Equity One agreed to lend George $220,000. As security for the loan, George and Carolyn executed a mortgage in favor of Equity One on property that was described exactly as it had been in the 1995 deed—as Lot 23.01, Block 934 on the tax map and also as 633 Point Avenue. Although the mortgage documents included the language "TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property," no mention of the riparian grant (Lot 23.03) was contained therein.

George thereafter defaulted on the loan. Equity One foreclosed on the mortgage, and a sheriff's sale occurred on June 24, 1997. The sheriff's deed contained the same description of the encumbered property as the 1995 deed, including a metes and bounds description of the upland lot only. Equity One was the successful bidder and thus acquired title to the mortgaged property.

Subsequently, Equity One received separate offers to purchase the property from Joseph Panetta, Dennis and Dorothy McKenna, and Anne Covey. Panetta offered to buy the property for $220,000 and Equity One made a counteroffer of $235,000. Panetta agreed to the increased purchase price, and on July 16, 1997, the attorney for Equity One prepared a contract to that effect.

Panetta signed the contract and forwarded a $10,000 deposit. However, the contract was never signed by a corporate representative of Equity One.

In the interim, Dennis and Dorothy McKenna offered to purchase the property for $265,000 with the assistance of their real estate agent. The agent forwarded a contract signed by the McKennas, as well as an executed Right–to–Sell Listing Agreement and Dual Agency Consent Agreement. An officer of Equity One signed the contract, but the attorney for Equity One canceled it within the attorney review period. On July 23, 1997, Michael Morris, on behalf of Anne Covey, faxed an offer of $240,000 to Equity One.

On July 25, 1997, Equity One rejected all previous offers and initiated a closed bidding process limited to the three prior bidders—Panetta, McKenna, and Covey. The bid letter communicated Equity One's offer, as "the owner of 633 Point Avenue," to sell the property to the highest bidder subject to a few terms, which included that "[n]o realtor commissions [would] be paid by seller." Panetta submitted a bid of $255,000 with no other conditions or terms. McKenna submitted a bid of $287,000, describing the property as including both the upland lot and the riparian grant, and conditioned on the realtor's commission being subtracted from the bid offer. Covey submitted a bid of $280,000 with a statement that "[s]aid property according to the deed recorded in Ocean County lists a riparian grant which is incorporated in this bid as sale of both the property and the riparian grant."

On July 29, 1997, Equity One informed Covey that her bid was the highest. She promptly forwarded a ten-percent deposit and a contract, inclusive of the riparian grant. The contract was never signed by Equity One. Rather, the following day, the attorney for Equity One, believing a mistake had been made regarding the real estate commission, advised all parties that Equity One would reopen the process on an open competitive basis.

Covey immediately filed suit against Equity One for specific performance; breach of contract; breach of implied covenant of

good faith and fair dealing; consumer fraud; fraud; and malicious misrepresentation. Panetta and the McKennas filed separate complaints and the McKenna's realtor successfully moved to intervene. The complaints were consolidated into a single action in the Chancery Division in which the parties stipulated to the facts and agreed that the judge's findings could be based solely on the deposition testimony and documents that had been submitted.

At trial, the issues presented were: (1) whether the pre-bid communications between Panetta and Equity One's attorney resulted in a valid and enforceable contract; (2) whether the July 25th bid process letter was a solicitation of offers or an offer soliciting acceptance; (3) if the July 25th letter represented an offer, whether the highest responsive bid constituted a valid acceptance; and (4) whether a valid and enforceable contract resulted from the post-bid communications between Covey and Equity One. The trial judge, Judge Clyne, concluded that the communication between Panetta and Equity One's attorney did not result in an enforceable contract because it was not signed by Equity One and because the parties intended to enter into a formal written contract before being bound.

The judge further determined that Equity One's July 25th letter constituted an offer in a without-reserve auction [1] for which the highest responsive bid would constitute a valid acceptance, resulting in a binding contract. Next, the judge considered each bid. He found the McKenna bid non-conforming because, contrary to the bid letter, it was conditioned on realtor commissions being paid from the bid amount and because it included the riparian

---

[1] A without-reserve auction is one in which:

> [T]he property will be sold to the highest bidder, no minimum price will limit bidding, the owner may not withdraw property after the first bid is received, the owner may not reject any bids, and the owner may not nullify the bidding by outbidding all other bidders. In an auction without reserve, the owner essentially becomes an offeror, and each successively higher bid creates a contingent contract, *the highest bid creating an enforceable agreement.*

[*Black's Law Dictionary* 140 (8th ed. 2004) (emphasis added).]

grant, which was not part of Equity One's offer. He also held that Covey's bid was non-conforming because of the inclusion of the riparian grant.

With respect to post-bidding communications between Covey and Equity One, the judge found that the parties contemplated a formal written contract that was never signed. He concluded that Panetta had submitted the only conforming bid, ordered specific performance in favor of Panetta, and deconsolidated the lawsuits.

Covey filed a motion for reconsideration asserting that she was the highest conforming bidder because the riparian grant followed the upland property as a matter of law under *N.J.S.A.* 46:3–16, which provides:

Every deed conveying land shall, unless an exception shall be made therein, be construed to include all and singular the buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and of every part and parcel thereof.

The judge disagreed, concluding that Equity One could only convey that which it owned and that because it had only foreclosed on the upland property, it did not own the riparian grant. Accordingly, he denied Covey's motion for reconsideration. Covey appealed.

In an unpublished opinion, the Appellate Division remanded the case to the trial judge, stating that on the record before it, it could not "determine whether the riparian rights were intended to be separate and distinct and purposely not intended to be included in the deed transfer on March 22, 1995, or whether the omission of the riparian rights was a scrivener's oversight." In addition, the panel noted that the parties' intent was "an important factor in determining whether the riparian grant followed the upland property"; that George, Carolyn, and Rowina Francis each had an interest in the case and should have been given an opportunity to intervene; and that there was "an unresolved material factual dispute" warranting remand to the trial judge for a plenary hearing to determine the ownership of the riparian grant. There-

after, George, Carolyn, and Rowina were joined in the action and all parties again consented to a decision based on the judge's review of the written record.

In his June 11, 2004, decision, Judge Clyne determined, as a matter of fact, that George Francis intentionally excluded the riparian grant in securing the mortgage and that Equity One was, in fact, unaware of the grant. Had the situation been otherwise, the judge concluded, Equity One would have required the grant to be included in the mortgage. The judge further held that neither *N.J.S.A.* 46:3–16 nor any other statute or case requires that a riparian grant follow the upland property as a matter of law. Therefore, he again awarded specific performance to Panetta on the ground that Panetta, whose bid was limited to the upland lot, had submitted the only conforming bid and that an enforceable contract resulted. The judge also dismissed Covey's fraud claim against Equity One and entered final judgment. Covey again appealed.

In a published opinion, the Appellate Division affirmed the dismissal of Covey's fraud and misrepresentation claims but reversed the judgment of specific performance in favor of Panetta. *Panetta v. Equity One,* 378 *N.J.Super.* 298, 320, 875 *A.*2d 991 (App.Div.2005). Noting that *N.J.S.A.* 46:3–16 requires that deeds should be construed broadly to include all appurtenances unless expressly excepted, the panel held that, although not mentioned or described, the riparian grant was included in the 1995 conveyance. *Id.* at 315–17, 875 *A.*2d 991.

In ruling, the panel declared the intent underlying *N.J.S.A.* 46:3–16 to be the provision of "certainty and stability in land ownership" and "to prevent fraud by precluding a grantor from attempting to secretly retain, through ambiguous drafting, some part of or interest in land." *Id.* at 311–12, 875 *A.*2d 991. Accordingly, the panel determined that "all property interests that may arguably be contained within or deemed appended to a parcel of real property" fall within the statute's "all-encompassing scope" and that a riparian grant is appurtenant to the land to which it is

adjacent as a matter of law. *Id.* at 312–13, 875 *A.*2d 991. Thus, "the riparian rights were conveyed notwithstanding the absence of any express mention of those rights in the 1995 deed, and notwithstanding the grantors' actual intentions." *Id.* at 317, 875 *A.*2d 991.

Ultimately, the Appellate Division concluded that although Equity One held legal title to the upland property and riparian grant, it did not follow that an enforceable contract with Covey resulted. The panel reasoned that because of uncertainty regarding the riparian grant, "it would be inequitable to compel Equity One to perform that contract in light of the latter's understandable confusion about what it was that it was attempting to sell." *Id.* at 320, 875 *A.*2d 991. Thus, the panel remanded the case for:

(1) a dismissal of all claims that seek specific performance or that rely upon a contention that the plaintiff possesses enforceable contract rights; (2) the entry of a declaratory judgment, in recordable form, that Equity One holds legal title to the entirety of 633 Point Avenue, including the upland property as well as the riparian grant; (3) a dismissal of all other claims not previously disposed of that cannot stand in light of this decision, and (4) an adjudication of any remaining claims not previously disposed of, but only "rescheduled," that are not dependent upon any of the claims that were either previously dismissed or which must be dismissed in light of this decision.

[*Ibid.*]

Covey moved for reconsideration on the contract issues, which the Appellate Division denied. Panetta and Covey then each filed a petition for certification. Panetta challenged the Appellate Division's determination that the riparian grant was included in the deed for the upland lot as a matter of law. Covey challenged the Appellate Division's decision to invalidate her contract on the grounds of "confusion." We granted both petitions. *Panetta v. Equity One, Inc.*, 187 *N.J.* 80, 899 *A.*2d 303 (2006); *Covey v. Equity One, Inc.*, 187 *N.J.* 80, 899 *A.*2d 303 (2006). We also granted amicus curiae status to the New Jersey Land Title Association and to the National Auctioneers Association.

## II.

Panetta argues that the riparian grant was not conveyed with the upland property and that the Appellate Division erred in

construing *N.J.S.A.* 46:3–16 to that effect; that the tax map designation is the critical point that obviates the possibility of the riparian grant being considered an appurtenance; that all property in foreclosure must be clearly identified and the riparian grant was not; and, finally, that he was the highest conforming bidder and should be awarded the property.

Covey argues that she is entitled to the property as a result of her bid in the without-reserve auction; that, as a matter of law, the riparian grant was included with the upland property under *N.J.S.A.* 46:3–13 and –16; that Equity One is a sophisticated commercial entity and, thus, the Appellate Division's invalidation of her bid based on "confusion" was improper; that the Appellate Division's decision undermines confidence in public auctions; and that Equity One's attempt to redo the auction violated the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20.

Equity One does not take a position on the question of whether the riparian grant was conveyed with the upland property by operation of law but argues that the Appellate Division correctly ordered a rebid based on confusion.

The New Jersey Land Title Association submits that the Appellate Division's decision could adversely affect the stability of titles to real property throughout New Jersey; that the panel confused riparian rights and riparian grants in interpreting *N.J.S.A.* 46:3–16; and that the intent of the parties governs what property is transferred with a deed.

The National Auctioneers Association argues that the bidding process here constituted a without-reserve auction in which the highest bid created an enforceable contract that cannot be invalidated because of the confusion of one party.

### III.

At the heart of this case is the 1995 deed. Covey argues that that deed transferred the riparian grant as a matter of law and that, when George and Carolyn secured the mortgage, the riparian

grant was therefore also included. If Covey is correct, only the contract issues remain to be resolved. If Covey is incorrect and the riparian grant did not pass as a matter of law under the 1995 deed, George and Carolyn only secured the mortgage with the upland lot, and that is all Equity One could have acquired at the sheriff's sale. Under that scenario, only Panetta's bid was conforming. We turn, then, to the applicable legal principles.

## A.

Under New Jersey law, deeds are "construed to include all the [grantor's] estate, right, title, interest, use, possession, property, claim and demand" unless the grantor expressly limits the conveyance. *N.J.S.A.* 46:3–13. Moreover, *N.J.S.A.* 46:3–16 provides as follows:

> Every deed conveying land shall, unless an exception shall be made therein, be construed to include all and singular the buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and of every part and parcel thereof.

The Appellate Division broadly interpreted that statute to sweep in "all property interests that may arguably be contained within or deemed appended to a parcel of real property, whether tangible or intangible." *Panetta, supra,* 378 *N.J.Super.* at 312, 875 *A.*2d 991. In particular, the panel declared that the riparian grant was appurtenant to the upland lot under *N.J.S.A.* 46:3–16 and that it passed with the deed to the upland lot because that deed did not explicitly exclude it. *Id.* at 315, 875 *A.*2d 991.

In ruling as it did, the Appellate Division failed to distinguish between a riparian right and a riparian grant. A riparian right is the right of a riparian landowner to make reasonable use of adjacent water and is facially included in *N.J.S.A.* 46:3–16. A riparian grant is a separate estate in land. Contrary to the Appellate Division's view, riparian rights and grants are not identical and are not similarly governed by *N.J.S.A.* 46:3–16. This case centers on a riparian grant of real property identified on the tax map as distinct from the upland lot. That

separate designation, which the Appellate Division viewed as inconsequential, is in fact critical.

### B.

Riparian means "[o]f, relating to, or located on the banks of a river or stream (or occasionally another body of water, such as a lake)." *Black's Law Dictionary* 1352 (8th ed. 2004); 6 *Waters and Water Rights* 1290 (Robert E. Beck, ed., 1991, repl. vol. 2005). Riparian doctrine declares that

> [O]wners of lands along the banks of a stream or waterbody have the *right* to reasonable use of the waters and a correlative *right* protecting against unreasonable use by others that substantially diminishes the quantity or quality of water. The *right* is viewed as a property interest or as appurtenant to the land and does not depend on prior use.
>
> [*Water and Water Rights, supra,* at 1290 (emphasis added); *see also Black's Law Dictionary* 1352 (8th ed. 2004) (defining "riparian-rights doctrine" as "[t]he rule that owners of land bordering on a waterway have equal rights to use the water passing through or by their property").]

In essence, a riparian right is a license or privilege to access and make reasonable use of water. *See Black's Law Dictionary* 1352 (8th ed. 2004); *see also Grobart v. N. Jersey Dist. Water Supply Comm'n,* 142 *N.J.Eq.* 60, 66, 58 *A.*2d 796 (Ch.1948) (holding riparian right is not ownership of water, only right to use flow).

 Riparian lands are lands lying along the banks of a stream or water body. *Water and Water Rights, supra,* at 1290; *Black's Law Dictionary* 893–94 (8th ed. 2004). "The State owns in fee simple all lands that are flowed by the tide up to the high-water line or mark." *O'Neill v. State Highway Dep't.,* 50 *N.J.* 307, 323, 235 *A.*2d 1 (1967). A riparian grant, in turn, is the method by which the State conveys riparian lands to its citizens. *See N.J.S.A.* 12:3–7; *N.J.S.A.* 12:3–10; *Dickinson v. Fund for Support of Free Public Sch.,* 95 *N.J.* 65, 79, 469 *A.*2d 1 (1983) (recognizing legislative authorization for Tidelands Resource Council to convey and lease riparian lands). Like other conveyances, a riparian grant is not limited to an upland owner but may, after being offered by the State to the upland owner, be granted to persons who are unconnected to the upland property. *N.J.S.A.* 12:3–23.

In *Hoboken v. Pennsylvania Railroad Co.*, the United States Supreme Court explained the nature of a riparian grant:

[T]he title and interest of the state in these shore lands [is] a distinct and separate estate, to be dealt with and disposed of in accordance with the terms of the statutes; first, by a sale and conveyance to the riparian owner himself, or to his assignees; and, second, in case of his neglect to take from the state its grant on the terms offered, then to a stranger, who, succeeding to the state's title, would have no relation to the adjacent riparian owner, except that of a common boundary.

. . . .

[T]he title under the New Jersey grants is not only of a new estate, but in a new subject divided from the upland or riparian property by a fixed and permanent boundary.... [Such grants are] of the estate in the land, and not of a mere franchise or incorporeal[2] hereditament.... [U]nder these grants the land conveyed is held by the grantees on the same terms on which all other lands are held by private persons under absolute titles, and every previous right of the State of New Jersey therein, whether proprietary or sovereign, is transferred or extinguished, except such sovereign right as the State may lawfully exercise over all other private property.

[124 *U.S.* 656, 690–91, 8 *S.Ct.* 643, 654–55, 31 *L.Ed.* 543, 552 (1888).]

■ In short, a riparian grant is the conveyance of real property divided from the uplands by a fixed boundary, no different from any other conveyance of land. *See Buzby v. Rose*, 114 *N.J.Eq.* 580, 586, 169 *A.* 293 (Ch.1933) (adjoining riparian tract is "distinct and separate estate"); *Moore v. Ventnor Gardens, Inc.*, 105 *N.J.Eq.* 730, 735, 149 *A.* 536 (Ch.1930) (observing that mortgage of land abutting water does not include separate riparian grant), *aff'd o.b.*, 109 *N.J.Eq.* 132, 156 *A.* 419 (E. & A.1931); *see also* 29 *New Jersey Practice, Law of Mortgages* § 5.7, at 42 (Myron C. Weinstein) (2d ed. Supp. 2005) (defining riparian grant as tract of land entirely separate and distinct from uplands).

Covey's argument to the contrary is simply not correct. She contends that a riparian grant is not like other conveyances. In support, she cites the following language from the original 1928 deed to the Metedeconk Company, the predecessor in title to the Francis family:

---

[2] Incorporeal is synonymous with "intangible" and means "[h]aving a conceptual existence but no physical existence." *Black's Law Dictionary* 782 (8th ed. 2004).

And Also Provided, that if the said The Metedeconk Company is not the owner of the land adjoining the land under water hereby granted, then and in that event this instrument and conveyance, so far as the same binds the State, and all covenants herein on the part of the State, shall be void as affecting any part or parts of said land which joins land not owned by the said The Metedeconk Company.

Covey argues that the deed language shows that a riparian grant is a lesser interest in property because, if separated from the uplands, it reverts to the State. Covey misapprehends the import of that language. Its purpose is not to proscribe severance of the riparian lands from the uplands, but to condition the grant on compliance with the statutory requirement that when riparian lands are sold by the State they must first be offered to the upland owner. *See N.J.S.A.* 12:3–23. The clauses are placed into the deeds to cause reverters to the State in the event that the initial claim of upland ownership turns out to be false. *See Ocean City Ass'n v. Shriver,* 64 *N.J.L.* 550, 565–66, 46 *A.* 690 (E. & A. 1900) (holding riparian grant conditioned on ownership of uplands by initial grantee and subject to invalidation if grantee is not owner); *In re Tideland's License 96–0114–T,* 326 *N.J.Super.* 209, 216, 740 *A.*2d 1125 (App.Div.1999) (same); *Hous. Auth. of Atl. City v. State,* 188 *N.J.Super.* 145, 149–50, 456 *A.*2d 534 (Ch.Div. 1983) (stating grant contingent upon actual upland ownership).

Covey relies on language in *Karam v. Department of Environmental Protection* to support her contrary view. 308 *N.J.Super.* 225, 239–40, 705 *A.*2d 1221 (App.Div.1998), *aff'd o.b.,* 157 *N.J.* 187, 723 *A.*2d 943, *cert. denied,* 528 *U.S.* 814, 120 *S.Ct.* 51, 145 *L.Ed.*2d 45 (1999). To the extent that *Karam* can be read to suggest that a riparian grant cannot be severed from the upland property, it is incorrect. As we have said, the requirement of upland ownership only inheres in the initial transaction with the State, which is required by statute first to offer the riparian grant to the upland owner. After the initial conveyance, a stranger to the uplands may own the riparian grant. We repeat, therefore, that a riparian grant is the conveyance of real property divided from the uplands by a fixed boundary, no different from any other conveyance of land.

## C.

■ Given the description of the riparian grant as an estate in land and "not a mere franchise or incorporeal hereditament," the notion that it is, as a matter of law, appurtenant to the upland property is simply unavailing. An appurtenance "belongs or is attached to something else" and is generally of an incorporeal nature. *Black's Law Dictionary* 111 (8th ed. 2004).

> Lord Coke says (Coke Lit. 121, *b.*) a thing corporeal cannot properly be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal. According to this rule, land cannot be appurtenant to land .... A mere easement may, without express words, pass as an incident to the principal object of the grant; but *it would be absurd to allow the fee of one piece of land, not mentioned in the deed, to pass as appurtenant to another distinct parcel, which is expressly granted by precise and definite boundaries.*
>
> [*Harris v. Elliott,* 10 Pet. 25, 35 *U.S.* 25, 54, 9 *L.Ed.* 333, 344 (1836) (emphasis added).]

Our case law has long recognized that rule. Thus, for example, in *Potter v. Hill,* the Appellate Division determined that "appurtenances" generally refer to things of an incorporeal nature and declined to authorize conveyance of a cesspool on an "adjoining premises" (a corporeal thing) as appurtenant to a deed which did not expressly mention it. 43 *N.J.Super.* 361, 364–66, 128 *A.*2d 705 (App.Div.1957); *see also* 29 *N.J. Practice, supra,* § 5.7 at 44 (Supp. 2005) (noting that *"N.J.S.A.* 46:3–16 codifies the common law rule as to deeds—that incorporeal rights held as appurtenant to land will pass upon a conveyance of the dominant tenement, although not mentioned in the deed of conveyance"). Contrariwise, "[a]n abutting riparian tract separately assessed on the tax rolls can hardly be considered an 'incorporeal' right." 29 *N.J. Practice, supra,* § 5.7 at 44 (Supp. 2005).

*Friedman v. Monaco & Brown Corp.* is similarly instructive. 258 *N.J.Super.* 539, 610 *A.*2d 885 (App.Div.1992). There, a tax sale certificate in a foreclosure on upland property did not expressly include an alluvion.[3] *Id.* at 542, 610 *A.*2d 885. The

---

[3] An alluvion is "an addition of land caused by the buildup of deposits from running water, the added land then belonging to the owner of the property to which it is added." *Black's Law Dictionary* 85 (8th ed. 2004).

Appellate Division held that the foreclosure judgment extinguished the property owner's interest in the accreted land because "the alluvion is also part of the beachfront estate *until such time as it* is severed by subdivision or *is separately recognized by the municipal taxing authority in its assessments.*" *Id.* at 544, 610 A.2d 885 (emphasis added). Indeed, the Appellate Division concluded that the plaintiff's predecessor, whose property rights were foreclosed in the tax sale, could not have "separately conveyed" the additional alluvion "because it had neither been subdivided *nor in any way quantified by the action of municipal officers.*" *Id.* at 545, 610 A.2d 885 (emphasis added). Thus, although "riparian rights are part of the estate to which they attach," the alluvion, a corporeal thing, was only considered part of the upland parcel because it had not been "separately recognized by the municipal taxing authority" as in the case of a separately-assessed riparian land grant. *Id.* at 544, 610 A.2d 885.

█ Put another way, a riparian right and a riparian grant are conceptually distinct, and that distinction is pivotal in an appurtenance analysis. A riparian right not expressly mentioned in a deed can be appurtenant, but a riparian grant cannot. A contrary conclusion would allow a party to claim an ownership interest in a stranger's riparian lands as "appurtenant" to his own and would place in jeopardy the stability of titles to real property throughout the State.

To be sure, as the Appellate Division recognized on interlocutory review, if the deed had inadvertently omitted the adjacent riparian grant, for example as the result of a scrivener's error, it could have been construed and reformed to conform to the parties' actual intent. *See, e.g., Vagnoni v. Gibbons,* 251 *N.J.Super.* 402, 405–06, 598 A.2d 530 (Ch.Div.1991) (finding as fact parties intended to include riparian grant when re-deeding property back to original owners after construction and reading ambiguous deed accordingly). However, that notion has no currency in this case. The trial judge specifically found that the parties did not intend the 1995 deed or subsequent mortgage to include the riparian

grant, and no party challenged that finding as a basis for certification. Thus, for our purposes, there is no issue regarding the parties' intent. It is as the trial judge held it to be—the parties did not intend to include the riparian grant in the 1995 deed.[4] In short, the riparian grant was not included in the 1995 deed as a matter of fact or of law. Concomitantly, George and Carolyn secured the mortgage only with the upland property.

We note that separate aspects of the law governing mortgages lead to the same conclusion. Under *N.J.S.A.* 25:1–11(a) a mortgage is limited to the property described in the instrument:

A transaction intended to transfer an interest in real estate shall not be effective to transfer ownership of the interest unless:

(1) *a description of the real estate sufficient to identify it,* the nature of the interest, the fact of the transfer and the identity of the transferor and the transferee are established *in a writing signed by or on behalf of the transferor;* or

(2) the transferor has placed the transferee in possession of the real estate as a result of the transaction and the transferee has paid all or part of the consideration for the transfer or has reasonably relied on the effectiveness of the transfer to the transferee's detriment.

[*N.J.S.A.* 25:1–11(a) (emphasis added).]

Generally, if property is not expressly included in the instrument's description, it will not be covered by the mortgage. *See* 29 *New Jersey Practice, supra,* § 3.16 at 124; *see also Buzby, supra,* 114 *N.J.Eq.* at 585, 169 *A.* 293 (noting lands subsequently acquired by riparian grant not included in description of mortgage and not included in lien of mortgage); *Moore, supra,* 105 *N.J.Eq.* at 735, 149 *A.* 536 (holding lien of mortgage extended no further than land described therein, not inclusive of abutting riparian tract); *Rutgers v. Kingsland,* 7 *N.J.Eq.* 178, 190 (Ch. 1848) (noting complainant can sell, by virtue of mortgage, only lands included within described boundaries), *aff'd,* 7 *N.J.Eq.* 658 (E. & A. 1851). Here the mortgage did not reference the riparian grant either expressly or obliquely.

---

4 For completeness, we have reviewed the record and have concluded that the trial judge's factual findings are fully supported by it.

Moreover, we note that prior to a foreclosure sale, a sheriff must give signed notice of the time and the place of the sale by public advertisement and that the notice must include an actual description of the property including "either a *diagram of the premises* or a *concise statement indicating the municipality, the tax lot and block* and where appropriate, the street and street number, and the dimensions of the premises, as well as the number of feet to the nearest cross street." *N.J.S.A.* 2A:61-1 (emphasis added). Here, the only description of the property in the sheriff's sale notice was what was contained in the 1995 deed— the upland lot. Thus, more could not have been included in the sale.

## IV.

Recapping, we are satisfied that a separately assessed riparian grant is not appurtenant to abutting upland property as a matter of law and that the Appellate Division erred in concluding otherwise. As such, George and Carolyn received only the upland property in the 1995 deed and could not have secured the Equity One mortgage with more than what was conveyed. Equity One, which prepared the loan documents, could have required George and Carolyn to obtain clear title to the riparian grant and to include the grant in the mortgage security. It did not do so. It follows that Equity One only foreclosed on the upland property and ultimately only obtained the upland lot in the sheriff's sale. Thus, Panetta, who bid on the uplands and did not attempt to include the riparian grant, was the only responsive bidder at the without-reserve auction. He has an enforceable contract with Equity One and is entitled to specific performance.

## V.

Our ruling makes it unnecessary for us to address the remaining contract issues. However, we add these thoughts. An auction without reserve is a unique methodology in which "the owner essentially becomes an offeror, and each successively higher bid creates a contingent contract, *the highest bid creating an enforce-*

*able agreement."* *Black's Law Dictionary* 140 (8th ed. 2004) (emphasis added); *see also N.J.S.A.* 12A:2–328; *Golfinopoulos v. Padula,* 218 *N.J.Super.* 38, 47, 526 *A.*2d 1107 (App.Div.) *certif. denied,* 109 *N.J.* 45, 532 *A.*2d 1112 (1987).

Under *N.J.S.A.* 12A:2–328(2), a sale takes place when the auctioneer announces the auction's completion by "fall of the hammer or in any other customary manner." *See Lott v. Delmar,* 2 *N.J.* 229, 232, 66 *A.*2d 25 (1949) (noting that when auctioneer's hammer falls, buyer and seller bear same relation to each other as parties to conventional contract for sale of goods); *Harris v. Merlino,* 137 *N.J.L.* 717, 721, 61 *A.*2d 276 (E. & A.1948).

Importantly, a seller in a without-reserve auction may not withdraw the item being sold once a conforming bid has been made. *N.J.S.A.* 12A:2–328(3); 1 *Williston on Contracts* § 4:9 (Lord 4th ed. 2006) (observing if auction is without reserve, "then the property may not be withdrawn after it has been put up and a bid has been made"); David Carl Minneman, *Auction Sales Under U.C.C. § 2–328,* 44 *A.L.R.*4th 110 (1986); J.J. Marticelli, *With-drawal of Property from Auction Sale,* 37 *A.L.R.*2d 1049 (1954).

Thus, had Covey's high bid in the without-reserve auction been conforming (which it was not), Equity One would have been without the power to force a new auction.[5] It follows that the Appellate Division's order that the property be rebid, based, not on fraud, accident, or mistake, but on some ephemeral notion of unilateral "confusion," violated the well-established legal principles governing auctions in which the parties bear the same relationship to each other as the parties to a conventional contract. *Lott, supra,* 2 *N.J.* at 232, 66 *A.*2d 25.

## VI.

The judgment of the Appellate Division is reversed. The trial judge's order of specific performance to Panetta is reinstated.

---

[5] Because Covey was not, in fact, the highest conforming bidder, she suffered no "ascertainable loss," and her consumer fraud claim must fail. *See Thiedemann v. Mercedes–Benz USA, LLC,* 183 *N.J.* 234, 238, 872 *A.*2d 783 (2005).

*For reversal and reinstatement*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.