FORST, J.
Appellant Edmund Accardi appeals the trial court’s orders granting judgment in favor of Appellee Regions Bank (“the bank”) on both the bank’s foreclosure complaint and Appellant’s counterclaim. Appellant challenges the trial court’s determination that newly formed land adjacent to his original parcel was subject to the bank’s mortgage. Because we agree with the trial court, we affirm.
Background
Appellant obtained title to a piece of oceanfront property (“the original property”) in 1996. The description in the warranty deed described the original property as “Lot 16, Block 10, HILLSBORO SHORES'SECTION ‘A’, according to the Plat, as recorded in Plat Book 21, Page 14, of the public Records of Broward County, Florida.” When Appellant married in 1997, he transferred the original property to himself and ■ his wife, using the same description as the initial deed.
Over time, new land built up on the oceanfront side of the original property (“the alluvium”). In 2002, Appellant and his wife obtained a stipulated- judgment quieting title to the alluvium. In this judgment, the trial court found that “[t]he land area of [Appellant’s] subdivision lot has been extended in an easterly (seaward) direction as the result of the gradual, natural,- and imperceptible buildup of additional lands adjacent to and east of the easterly lot line....” The court found that this alluvium belonged to Appellant and his wife in fee simple “in that said lands were added to their subdivision lot by the natural process of accretion and/or reliction.” The court further noted that this alluvium passed to them “under the deed by which they took title” to the original land and that the common law principles governing the ownership of lands adjacent to waterways would “continue to apply to the property and to the adjacent Atlantic Ocean and its navigable waters.”
Appellant and his wife subsequently divorced. She quitclaimed her interest in the property to Appellant, using the property description used in the original deed. No mention was made of the alluvium.
In 2008, Appellant executed a mortgage in favor of the bank in exchange for á line *746 of credit in the amount of $2,250,000. The mortgage described the property using the same language as the. initial deed.
When Appellant defaulted on the loan, the bank filed an action to recover on the note, foreclose on. the mortgage, and reform the mortgage to include the alluvium as part of the secured property. Appellant counterclaimed for declaratory judgment, asking the trial court to resolve the question of whether the alluvium was part of the encumbered property or a separate parcel not encumbered by the mortgage.
The bank moved for summary judgment on Appellant’s counterclaim. The trial court granted the bank’s motion for summary judgment, concluding that the alluvium was automatically added to the original property as it formed and, because it was not expressly carved out of any. subsequent grant, was included in the mortgage. After a trial on the foreclosure actions, the trial court entered a final judgment that granted the bank’s foreclosure and reformed the mortgage to include the alluvium. This appeal follows.
Analysis
The ultimate question in this case is the status of the alluvium as either (a) part of the original property and, thus, subject to the mortgage, or (b) a new, separate parcel of land that was not encumbered by the mortgage describing only the original property.
“Under both the Florida Constitution and the common law, the State holds the lands seaward of the [Mean High Water Line] including the beaches between the mean high and low water lines, in trust for the public for the purposes of bathing, fishing, and navigation.” Walton Cty. v. Stop the Beach Renourishment, Inc., 998 So.2d 1102, 1109 (Fla.2008). “Private upland owners hold the bathing, fishing, and navigation rights described above in common with the public. In fact, upland owners have no rights in navigable waters and sovereignty lands that are superior to other members of the public in regard to bathing, fishing, and navigation.” Id. at 1111 (citations omitted).
“However, upland owners hold several special or exclusive common law littoral rights: (1) the right to have access to the water; (2) the right to reasonably use the water; (3) the right to accretion and reliction [1]; and (4) the right to the unobstructed view of the water.” Id. (emphasis added). “Though subject to regulation, these littoral rights' are private property rights that cannot be taken from upland owners without just compensation.” Id.
[B]ased upon this Court’s early description of the nature of littoral rights, it is evident that the littoral right to accretion and reliction is distinct from the rights to access, use, and view. The rights to access, use, and view are rights relating to the present use of the foreshore and water. The same is not true of the right to accretion and reliction. The right to accretion and reliction is a contingent, future interest that only becomes a,possessory interest if and when land is added to the upland by accretion or reliction.
Id. at 1113. The rule at common law still exists today—gradual changes in shoreline result in a scenario where “the owner of the [upland] [property] loses title to the land that is lost by erosion and ordinarily *747 becomes the owner of the land that ⅛ added to his land by accretion [or reliction],” while when a sudden shift occurs, “the boundary line remains the same regardless of the change in the .... shoreline.” Id. at 1114 (all alterations except the second in original) (quoting 73 AM. JUR. 3D Proof of Facts 167, § 3 (2003)).
The United States Supreme Court has noted that “[i]n Florida, as at common law, the littoral owner automatically takes title to dry land added to his property by accretion_” Stop the Beach Renourishment, 560 U.S. at 709, 130 S.Ct. 2592. The use of the terms “automatically” and “land added” show that the property rights in the new land are derived from, and become part of, the owner’s rights in the upland parcel.[2] “Any other rule would leave riparian owners continually in danger of losing access to water which is often the most valuable feature of their property, and continually vulnerable to harassing litigation challenging the location of the original water lines.”[3] Bd. of Trs. of Internal Improvement Tr. Fund v. Medeira Beach Nominee, Inc., 272 So.2d 209, 213 (Fla. 2d DCA 1973) (quoting Hughes v. Washington, 389 U.S. 290, 293-94, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967)). This is consistent with the language in the quiet title action, in which the trial court stated that Appellant took the alluvium “under the deed by which they took title to the Subdivision Lot, pursuant to the common law doctrines of accretion and/or reliction.”
Appellant’s entire argument rests on the premise .that.the alluvium is a new parcel of land, separate and apart from the original property. He relies on Panetta v. Equity One, Inc., 190 N.J. 307, 920 A.2d 638 (2007). In that case, the New Jersey Supreme Court -considered whether a riparian grant was included as an appurtenance to abutting real property in a conveyance that made no mention of the grant. Id. at 639. The court concluded that, unlike a riparian right, a riparian grant could not be considered appurtenant to a parcel of land because it was a “separate estate. in land.” Id. at 644. Thus, because' the riparian grant was not attached to the upland property, it was also not encumbered by a mortgage on the upland property. Id. at 648.
 Panetta is inapposite; Besides the obvious issue with applying New Jersey law to a Florida case, the case relies entirely on discussion of a “riparian grant.” A riparian grant is the transfer of lands below .the mean high water line, outside the scope of normal riparian -rights. See N.J. Stat. Ann. § 12:3-23 (West 2009); Brickell v. Trammell, 77 Fla. 544, 82 So. 221 (1919). There was no riparian grant in the case at issue—all the lands are above the mean high water line.
Appellant also cites South Venice Corp. v. Caspersen, 229 So.2d 652 (Fla. 2d DCA 1969). There, a plaintiff sought a determination that he was the owner of a parcel of land, “including a certain island and all the *748 submerged’lands 'in said Section.” Id. at 658. The court specifically' found that “[r]iparian rights are not involved in this case.” Id. at 655. Instead, the submerged lands in question were originally conveyed to the plaintiff as “swamp and overflowed lands.” Id. The court noted that “[a]s a- general rule, land does not pass under a deed as an appurtenance to land. Swamp, boggy and marsh land is properly treated as land, and likewise does not pass under a deed as ah appurtenance.” Id. (citation omitted).
Appellant relies on the general rule pronounced in Caspersen to show that the alluvium cannot pass as an appurtenance to the original property. While Appellant’s quote from Caspersen may be correct, it cannot have the effect he desires in this case. Caspersen is- distinguishable because it. deals with the rights and conveyance of submerged lands, while the question here is the status of land that is now above the mean high water line. Further, riparian rights are “appurtenant to and are inseparable from the riparian land.” § 258.141(1), Fla. Stat. (2012). One of the riparian rights is “the right to accretion and reliction.” Walton Cty., 998 So.2d at 1111. This riparian right to accretion cannot create a wholly new parcel of land that has no relation to the original riparian land, as the right, cannot be separated from the riparian, property. Combining the statute and the case law, the two must remain part of a single whole. The trial court properly determined the alluvium was added to, and - became part of, the original property.
Appellant’s contention at trial that he only intended to mortgage the original property, not the alluvium, is not disposi-tive. Without ah express carving out of the alluvium, it was presumed to pass with the original property. See Haynes v. Carbonell, 532 So.2d 746, 748 (Fla. 3d DCA 1988) (“[Sjeverance of riparian or littoral rights cannot be inferred from a deed which is silent on the subject of riparian land or rights.”); Legendary, Inc. v. Destin Yacht Club Owners Ass’n, 724 So.2d 623, 624 (Fla. 1st DCA 1998) (“[A]bsent severance of riparian rights, those rights remain with the upland owner.”). Although the mortgage in this case only described the original property, Appellant’s failure to separate the alluvium meant that it was encumbered as part of the original property. Appellant’s silence cannot be construed as a separation of the new land from the old. Therefore, as a matter of law, the mortgage was properly reformed to include the alluvium.
Conclusion
We affirm the trial court’s rulings on all issues. The alluvium in this case was a part of the original property as a matter of law from the moment of its creation. Appellant’s mortgage of the original property included the alluvium as there was not express separation of the alluvium from the upland property. The foreclosure judgment properly included the alluvium.

Affirmed.

CIKLIN, C.J. and LEVINE, J., concur.

. "Accretions are additions of alluvion (sand, sediment, or other deposits) to waterfront land; relictions are lands once covered by water that become dry when the water recedes.” Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 708, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010).

. See also William Stoebuck & Dale Whitman, The Law Of Property 825 (3d ed. 2000) (“Rivers and streams which serve as boundaries pose additional problems because they can and do change course. When such changes are slow and imperceptible, the law’s policy is to treat the legal boundary as changing with the stream itself, whether the boundary is the stream's border, its center, or some other line in it. In this way, the upland owner’s adjacency to the stream is preserved.”)

. This point is particularly important because, if Appellant’s argument was adopted, it would be possible for a person's beachfront property to become a landlocked property solely by . virtue of accretion or reliction, likely resulting in a dramatic decrease to the value of the property. In order to prevent this unjust outcome, the law has evolved to consider new land to be part of the old parcel.