**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0621-23

JERSEY SHORE BEACH AND
BOARDWALK COMPANY, INC.,
a/k/a JERSEY SHORE BEACH &
BOARDWALK INC.,

     Plaintiff-Appellant,

v.

BOROUGH OF KEANSBURG, a
MUNICIPAL CORPORATION,

     Defendant-Respondent.

_____

> Argued October 23, 2024 – Decided December 10, 2024
>
> Before Judges Currier, Marczyk and Paganelli.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000048-19.
>
> R.S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, on the briefs).

David A. Clark argued the cause for respondent (Dilworth Paxson LLP, attorneys; David A. Clark, of counsel and on the brief; John M. Glynn, on the brief).

PER CURIAM

Plaintiff, Jersey Shore Beach and Boardwalk Company, Inc. a/k/a Jersey Shore Beach & Boardwalk Inc., (Jersey Shore) appeals from: (1) a motion court order of May 8, 2020, denying without prejudice its motion to bar defendant's, Borough of Keansburg's (the Borough), expert Edward Eastman (Eastman) from testifying at trial; and (2) a trial court order of September 25, 2023, entered after a bench trial, finding it has no interest in real property owned entirely by the Borough. We affirm.

In April 2019, Jersey Shore filed a complaint against the Borough. By way of background, Jersey Shore alleged it owned properties in the Borough and had been "in business on [those] properties . . . for approximately 100 years, operating a recreation/amusement facility generally known as the 'Keansburg Amusement Park.'"

Further, Jersey Shore alleged that "[i]n and prior to 1998/1999, the . . . Borough represented and held out to the public that the Borough was the fee owner of certain property known as Lots 3 and 3.01 . . . located in the immediate

A-0621-23

vicinity of [Jersey Shore]'s property upon which [Jersey Shore] operates its business."

In addition, Jersey Shore alleged it "entered and executed a [l]ease with the . . . Borough . . . by which [Jersey Shore] leased and occupied a portion of Lot 3 . . . said portion now known and identified as Lot 3.01."

Further, Jersey Shore alleged that its research "demonstrate[d] that . . . although both Lot 3 and 3.01 are and have been listed on [the] Borough [t]ax records for many years as owned by the Borough . . . the . . . Borough in fact does not own the substantial majority of Lot 3 (and/or 3.01), but only owns a very small portion of said parcel."

Jersey Shore alleged that in 1939, when the Borough acquired certain property—through a tax foreclosure action—the judgment "did not specify or include all of the parcel/property represented as Lot 3 and 3.01." Instead, the "description only include[d] a thin strip of land."

Jersey Shore contended that:

> (a) Prior to 1900, title to the upland portion of Lot 3 was owned by William Quinlan. In 1879, Quinlan acquired fee simple title to the riparian lands (now known as Lot 3.01) by Riparian Grant from the State.
>
> (b) In 1909[,] William Quinlan, Jr. conveyed all the lands as shown on a certain Map entitled "Map of Keansburg Heights" . . . . That conveyance included all

the riparian rights owned by Quinlan; thus conveying Lot 3.01 to Keansburg Heights Company.

(c) In 1920, Keansburg Heights Company conveyed many of the lots shown on the "Map of Keansburg Heights" including the property on said Map marked beach to Peter Licari . . . .  That Deed did not convey the riparian rights acquired by Keansburg Heights Company, being the substantial majority of area of Lot 3.01.

. . . .

(e) Peter Licari conveyed the property acquired in 1920 from Keansburg Heights Company to P. Licari Inc. by Deed dated June 18, 1920 . . . .

(f) In 1939, the . . . Borough filed the [f]oreclosure [a]ction against P. Licari Inc.  However, the [f]oreclosure [a]ction failed to name or reference Keansburg Heights Company as a named [d]efendant for its property, being the riparian area now known as Lot 3.01 (other than the small strip . . . .).  Although the 1939 Final Decree does reference "Together with all riparian right adjoining the above described premises," Licari did not acquire the riparian rights area from Keansburg Heights Company and thus those rights were not Licari's to be foreclosed.

(g) As a consequence, [the] Borough did not acquire title by the 1939 Foreclosure Decree to the substantial majority of Lot 3 (or 3.01).  The Borough only acquired title to the strip . . . .

Therefore, Jersey Shore sought:  (1) declaratory judgment that the "Borough . . . has not had and does not now have, title or ownership to Lot 3

A-0621-23

and/or Lot 3.01, other than a strip portion"; (2) "a [j]udgment or [o]rder declaring that funds paid by [Jersey Shore] as rent to [the Borough] based upon the [Borough]'s inaccurate claim of ownership of said Lot 3.01 be refunded to" Jersey Shore, or "a [j]udgment or [o]rder placing the funds erroneously paid to and collected by [the Borough] as rent on said Lot 3.01 by [Jersey Shore] be deposited in [t]rust, and that the [c]ourt make a further determination as to . . . entitlement to said funds and/or whether said funds should escheat to the State" of New Jersey; and (3) judgment against the Borough for "damages [incurred] by reason of locating and constructing facilities on the leased property and being required to remove same due to [the Borough's] breach of contract in not owning the leased property, and/or other losses or expenses."

Subsequent to filing its complaint, Jersey Shore received quit claim deeds from some of the heirs of the successors to Keansburg Heights Company (KHC).

The Borough filed an answer, asserting it "obtained fee simple ownership to Lots 3 and 3.01 by virtue of a foreclosure on a tax certificate from P. Licari Inc. [(PLI)]."

The Borough included a third-party complaint, asserting—"to the extent . . . [KHC] still claim[ed] that it may have any ownership rights to any portion of Lot 3.01"—[KHC] "forfeited such ownership rights and such rights have

passed to the Borough through the doctrine of adverse possession" and/or by "the basic principles of equity." Therefore, the Borough sought to quiet title by: (1) "[a] declaration and determination that the Borough . . . is the rightful holder of title to Lot 3 (including the Lot informally known a[s] Lot 3.01), . . . and that [t]hird[-p]arty [d]efendant [KHC] does not have right, title or interest in said property"; (2) "an order compelling the [t]hird[-p]arty [d]efendant [KHC] to transfer legal title of Lot 3 (including the Lot informally known a[s] Lot 3.01) to the Borough"; and (3) "judgment forever enjoining [t]hird[-p]arty [d]efendant [KHC] from claiming any estate, right, title, or interest in Lot 3 (including the Lot informally known a[s] Lot 3.01)."

Jersey Shore filed a motion in limine to bar Eastman's testimony. While acknowledging Eastman was "an expert and renowned throughout New Jersey with regard to title issues," Jersey Shore sought to bar Eastman's testimony because he was an attorney, and his report impermissibly impinged upon the role of the trial court, by offering a legal opinion as to the meaning of words used in the deeds.

The Borough countered that the Eastman report was produced to rebut the report of Jersey Shore's expert, who was also an attorney. The Borough

contended that N.J.R.E. 702[1] permitted expert testimony to assist "the trier of fact." Further, the Borough argued "there [we]re ambiguities in the various title documents and deeds and those ambiguities [we]re [the] types of things that present fact issues that need to be decided by the trier of fact, in this case the [c]ourt." Moreover, expert testimony might assist the court regarding "what the standards and practices are in terms of title work, what normal clauses might mean and what they might [d]o in terms of being indicative of title."

The motion judge denied the motion without prejudice. The judge stated that she could not "tell at th[at] time . . . what [wa]s going to be presented by [Jersey Shore] and what exactly [the Borough] will need to rebut." Therefore, "[i]t would be . . . unfair at this point to state that [Jersey Shore] could have an expert" and bar the Borough's "expert without having heard [the] . . . testimony by [Jersey Shore's] expert." The judge stated she "simply [could]not make that determination . . . before trial." Thus, the judge denied "the application without prejudice subject to be[ing] renewed again at trial."

---

[1]  N.J.R.E. 702 provides:  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

The trial judge conducted a bench trial over several days. The trial included the admission of various documents, including the various deeds and maps, and witness testimony. Relevant to the appeal, Jersey Shore presented witness testimony from: (1) Richard O. Venino (Venino), who was accepted, without objection, by the court as an expert "in the field of land title"; and (2) George Piccola (Piccola), who was accepted, without objection, by the court as an expert "in the area of title, land title"; and who also provided fact witness testimony regarding the quit claim deeds—executed by some of the heirs of the successors of KHC—whereby the heir's interests were transferred to Jersey Shore.

Venino testified that when Quinlan deeded his interests to KHC he included the upland land and the riparian grant. Venino stated that although the deed did "not [make] a specific reference to the riparian grant[]," the language used in the deed was "clearly covering lands under water, all lands that . . . Quinlan would have had."

Venino further testified that the deed from KHC to Licari was "entirely different" than the deed from Quinlan to KHC. Venino stated the description contained in the deed to Licari did not refer to a "riparian grant" or lands under water. Instead, "the only thing . . . Licari acquired were the properties

specifically described in the grant of deed," the upland. Venino explained that he did not "know what . . . [KHC's] intent was at the time" or "what they intended to do" but he found no "intent" in the deed of KHC to Licari to convey riparian lands.

Moreover, Venino opined when Licari deeded his interest to Peter Licari, Inc. (PLI), he could not have transferred the riparian grant, because "he did[ not] have any title to it." In addition, "there[ wa]s no reference to the riparian grant in the deeds to" PLI.

Venino explained that PLI failed to pay taxes for "a series of tracts." He stated "[t]here were a series of liens," and the Borough purchased the tax sales certificates for the liens. Ultimately, the Borough filed a foreclosure complaint against PLI, however, Venino opined, PLI "had no title to the riparian lands."

In reviewing the foreclosure decree, Venino opined that there was a "possibility" that the foreclosed property did not include any portion of the riparian grant or a "little sliver" of the riparian grant.

Piccola testified that Quinlan acquired interests in two deeds, one for the uplands and one for the riparian grant. Further, he opined that in one deed Quinlan transferred both the uplands and the "riparian grant" to KHC. Piccola focused specifically on the language—of the Quinlan to KHC deed—wherein

9

Quinlan transferred "the lands lying underwater of the Raritan Bay" and "lands underwater" in opining that Quinlan transferred the "riparian grant" to KHC.

Piccola stated he found nothing in the title documents to indicate that "the deed from [KHC] to Licari" contained the riparian grant. He opined "that when they drew this deed, they were very specific as to what they wanted to convey," and "if they wanted to sell the riparian title, they would have included the riparian title in the deed." Further, Piccola explained that the KHC deed to Licari would not have specifically excepted out the "riparian grant" because the deed referenced a map that did not depict the "riparian grant."

He noted that the deed referenced the transfer of "riparian rights" but explained riparian rights differed from a "riparian grant." He explained that "[r]iparian rights are rights that you have to the waters that are adjacent to your property." Those rights include use of or access to the water, but not title.

On the other hand, he explained, a riparian grant is a "fee conveyance for the property that is defined under water." As a condition of holding a riparian grant, the grantee "could fill up to the bulkhead, no further. And then from the bulkhead out to the pierhead line they allow you to put up a pier." Moreover, "the part that you could fill" was treated "like any other piece of property." Therefore, the owner could sell, subdivide, or build on the filled property.

Piccola stated that none of the deeds "subsequent to KHC taking title," referenced the "riparian grant" as being transferred. Therefore, he opined that the deeds reflected an intent to exclude the "riparian grant." Thus, he concluded KHC did not transfer the "riparian grant" to Licari; and Licari could not have transferred to PLI "something he did[ no]t own."

Moreover, as to the Borough's foreclosure action, Piccola testified that the riparian grant "never came out of [KHC]" and KHC was not named in the action. Therefore, no part of the "riparian grant" was foreclosed by the Borough.

In addition, Piccola testified that "the current tax map . . . still show[ed] Quinlan as being the owner of the area where the grant is." However, he also noted the "assessment record" and the "Borough['s] owned properties" list did not "show[] anybody has ownership."

As relevant to the appeal, the Borough presented witness testimony from Eastman, who was proffered to the court as an expert in land "title issues." There was no objection to Eastman's qualification as an expert, nor his providing testimony. In other words, Jersey Shore did not renew the issues raised in their motion in limine.

Eastman testified that when he reviewed conveyance documents he sought to understand "the intent of the parties when they executed the documents."

11

Eastman stated that his review of the title revealed that Quinlan was the upland and riparian grant owner. Moreover, he testified that Quinlan conveyed the upland property and the riparian grant to KHC. As to the riparian grant, he stated it was important that the deed included language referencing "the lands being lined under the waters of Raritan Bay." He opined that Quinlan intended to "convey everything that they had to own, the upland portion and any portion in the riparian area that had been granted by the State."

Next, Eastman testified regarding the deed between KHC and Licari. He stated that "[t]here was an assortment of things that were conveyed." He noted the deed included: (1) certain blocks; (2) "all right, title and interest . . . in the streets, roads and avenues"; (3) "all buildings and materials"; (4) the beach; and (5) a "together with" clause that provided "[together] with all and singular, the houses, buildings, trees, ways, waters, profits, privileges, and advantages, with the appurtenant[] to the same belonging or in anywise appertaining."

Eastman opined that the deed between KHC and Licari included the riparian grant. He explained that with KHC "convey[ing] all of the lands, all of its estates" there would be no "way for anybody else to access th[e] riparian grant area" and "they[ would] have to jump into the water to get there." In other words, "there was no access, practical access."

A-0621-23

Eastman opined the deed between Licari and PLI included "the uplands and the riparian grant." Moreover, he concluded the Borough acquired the uplands and riparian grant in its foreclosure action against PLI.

The trial judge issued an oral opinion. In assessing the witnesses' credibility, the judge found Eastman's testimony regarding "the title issues to be more credible" than the testimony of Piccolo and Venino. The court "found . . . Eastman's testimony in . . . regard" to the Borough foreclosing all of Licari's interests and not allowing Licari to keep his riparian grant, "to be significantly more believable than the testimony of . . . Venino and . . . Piccolo."

The trial court described the property in dispute, "the subject property," as Lots 3 and 3.01. The judge traced the title to the subject property as follows: (1) "Quinlan . . . acquired title to certain upland properties," Lot 3; (2) "Quinlan then acquired a riparian grant," Lot 3.01; (3) "Quinlan conveyed his rights in the . . . property to" KHC; (4) KHC "conveyed the subject property to" Licari; (5) "Licari sold this property to" PLI; and (6) "the Borough obtained a final judgment in a tax foreclosure action that had been filed by the Borough against [PLI]. And [the Borough] acquired the . . . title to the property owned by" PLI.

The trial judge recognized "all of the prayers for relief asserted by [Jersey Shore] spr[a]ng from the determination [as to] . . . whether the Borough acquired

13

title to . . . the riparian grant." The judge noted that Jersey Shore's claims derived from the premise that the Borough's foreclosure action only divested PLI's interest in the uplands. Therefore, Jersey Shore asserted since KHC was still in title of the riparian grant property, which some of the heirs of the successors to KHC purportedly transferred to Jersey Shore through the quit claim deeds, Jersey Shore held title to the riparian grant.[2]

The judge considered: (1) <u>Panetta v. Equity One, Inc.</u>, 190 N.J. 307 (2007), for the proposition that "a riparian grant can pass with the conveyance of the upland property, despite not being expressly mentioned in the deed, if there is evidence that the parties intended its inclusion"; and (2) statutory presumptions found in N.J.S.A. 46:3-13[3] and N.J.S.A. 46:3-16,[4] and stated

---

[2] The record does not contain an amended complaint wherein Jersey Shore asserted its ownership of the riparian grant.

[3] N.J.S.A. 46:3-13 provides:

> [e]very deed conveying lands shall, unless an exception be made therein, be construed to include all the estate, right, title, interest, use, possession, property, claim and demand whatsoever . . . of the grantor, including the fee simple if he had such an estate, of, in and to the premises conveyed, with the appurtenances . . . .

[4] N.J.S.A. 46:3-16 provides: "[e]very deed conveying land shall, unless an exception shall be made therein, be construed to include all . . . waters,

14

"unless specifically excluded, the presumption is that the grantor is conveying all of their rights."

As to intent, the judge found the deeds—between KHC and Licari and Licari and LPI—included the "together with clause" which made "clear[]" to the judge "that the intent of these conveyances was to convey . . . the riparian grant."

The judge found any "view to the contrary" would "def[y] reason" because "[i]t is unlikely that there would have been the retention of lands underwater without having the uplands and the adjoining properties." The judge noted "there would have been no practical way to access riparian lands under water." Therefore, it did not "seem logical that [KHC] would have retained any interest in the riparian grant property."

In addition, the judge found KHC "took no action once it sold the property to Licari. And Licari took no action thereafter." The judge explained that by no action, he meant "no action to assert an ownership interest" and "they never claimed an ownership interest." Indeed, he noted "[t]hey never paid taxes." On the contrary, the judge found it was the Borough that undisputedly "asserted

---

watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining . . . and of every part and parcel thereof."

ownership."  The judge found that KHC, Licari, and PLI's inaction, regarding the riparian grant, evidenced an intent to convey the riparian grant.

The trial judge found Jersey Shore's position "not persuasive."  He concluded the riparian grant was conveyed from KHC to Lipari, and from Lipari to LPI.  Moreover, he determined "that the Borough legally obtained all interest in the subject property.  That was what was conveyed in the foreclosure action." Therefore, he denied Jersey Shore's claims for relief "in their entirety."  The judge executed an accompanying order providing that Jersey Shore had "no interest in the subject property and the property was fully conveyed to the Borough who holds [t]itle to the property."

On appeal, Jersey Shore contends the trial judge erred because:  (1) the judge's decision was contrary to New Jersey law that provides "without specific mention in the deed or other evidence that the parties intended inclusion of an abutting riparian grant, a riparian grant will not pass appurtenant to another distinct parcel"; and (2) Eastman's report and trial testimony should have been barred as "an impermissible legal opinion."

"In [an] appeal from a non-jury trial, we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned

16

conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974)).

Therefore, we will "'not disturb the factual findings . . . of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, 65 N.J. at 484). "Deference is particularly appropriate when the court's findings depend on credibility evaluations made after a full opportunity to observe witnesses testify, Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (citing Cesare v. Cesare, 154 N.J. 394, 412 (1998)), and the court's 'feel of the case.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Also, "[t]he admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). "As a discovery determination, a trial court's grant or denial of a motion to strike expert testimony is entitled to deference on appellate review." Ibid. "[W]e apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53

17

(second alteration in original) (quoting <u>Pomerantz Paper Corp. v. New Cmty.</u> <u>Corp.</u>, 207 N.J. 344, 371 (2011)).

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002) (quoting <u>Achacoso-Sanchez v. Immigr. & Naturalization Serv.</u>, 779 F.2d 1260, 1265 (7th Cir. 1985)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Applying these well-established principles, we defer to the trial court's finding that Eastman was more credible than Jersey Shore's experts. Eastman convinced the trial court that Licari's acquisition from Licari and subsequent transfers included the riparian grant.

Moreover, the judge's factual conclusions as to the parties' intent—drawn from the deeds' "together with language"; the practical outcome of not transferring the riparian grant; and the actions/inactions of KHC, Licari, PLI,

18

and the Borough following the transfers—are supported by substantial evidence in the record and are entitled to deference.

In <u>Panetta</u>, the New Jersey Supreme Court held "a riparian grant is a conveyance in fee simple of real property." <u>Panetta</u>, 190 N.J. at 309. "As such, without specific mention in the deed <u>or other evidence that the parties intended its inclusion</u>, a riparian grant will not pass as appurtenant to another distinct parcel." <u>Ibid.</u> (emphasis added).

Jersey Shore focuses on <u>Panetta's</u> "specific mention in the deed," language to argue neither the deed from KHC to Licari nor the deed from Licari to PLI "reference . . . either a [r]iparian right, [r]iparian grant or lands lying under the water." Therefore, Jersey Shore argues neither Licari nor PLI acquired those rights, and they remained in KHC.

Jersey Shore contends the trial court "ignored" the deed language and instead "rested its determination in large part on the 'actions' of Keansburg after the [t]ax [f]oreclosure and the lack of any action of the defunct company," KHC. Jersey Shore's contention is misplaced.

In <u>Panetta</u>, the New Jersey Supreme Court held that, aside from "specific mention in the deed," a court could consider "other evidence that the parties intended its inclusion." <u>Ibid.</u> In conducting the "other evidence" analysis, the

19

trial court considered the: (1) the deeds' "together with language"; (2) the practical outcome of the parties not transferring the riparian grant; and (3) the actions/inactions of KHC, Licari, PLI and the Borough following the transfers; and concluded that KHC intended to transfer the riparian grant to Licari and Licari intended to transfer the riparian grant to PLI because otherwise they would have taken some action against the Borough. In conducting our de novo review of this conclusion, we discern no legal error in the judge's interpretation of Panetta.

We part ways with the trial judge's suggestion that the presumptions provided in N.J.S.A. 42:3-13 and N.J.S.A. 42:3-16, played a role in this matter. In Panetta, the Court held the "sweep" of N.J.S.A. 42:3-16 would not capture the "riparian grant" because "[a] riparian grant is a separate estate in land." Panetta, 190 N.J. at 317. Similarly, the reach of N.J.S.A. 42:3-13 would not extend to the "riparian grant." Nonetheless, the judge's mention of the statutes did not control his decision and were "clearly [not] capable of producing an unjust result." R. 2:10-2.[5]

---

[5] Rule 2:10-2 provides:

> any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have

Finally, despite not renewing its objection to Eastman's testimony at trial, Jersey Shore contends that "Eastman [d]id nothing more than offer a legal opinion as to . . . what he believe[d] the 'intent' of the language of a deed written approximately 100 years ago."

Jersey Shore notes the motion judge denied its in limine motion. However, absent from Jersey Shore's appellate argument is any basis for us to conclude the motion judge's decision to deny the motion without prejudice and allow it to be renewed at the time of trial was erroneous.

Moreover, without any objection at trial—to Eastman's testimony going beyond the proper scope of expert testimony—we review Eastman's testimony under the "plain error" standard. Ibid. In other words, was the inclusion of Eastman's testimony "clearly capable of producing an unjust result." Ibid. We cannot conclude that standard has been met here. Eastman's testimony was not a "legal opinion" as suggested by Jersey Shore. Instead, Eastman's testimony rebutted the testimony of Jersey Shore's experts and "assist[ed] the [trial court] to understand the evidence or to determine a fact in issue." N.J.R.E. 702.

---

been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

To the extent we have not addressed other arguments raised by Jersey Shore, we find they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0621-23